**David TAYLOR, Plaintiff,**

v.

**James A. KVETON, Robert Nicholas, Michael Campise, James Cerny, Robert Kopczynski, Thomas Turek and the City of Elmhurst, a municipal corporation, Defendants.**

**No. 86 C 7444.**

United States District Court, N.D. Illinois, E.D.

March 18, 1988.

Harvey B. Bass, Mark Bolinsky, Chicago, Ill., for plaintiff.

Richard J. Puchalski, Doss Puchalski & Keenan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff David Taylor brings this civil rights action under 42 U.S.C. § 1983 (1982) against six City of Elmhurst police officers (collectively "defendants") for injuries arising out of his arrest for driving under the influence.[1] Presently before the Court is the defendants' motion for summary judgment under Fed.R.Civ.P. 56(c). Because we find there are disputed issues of material fact as to all defendants except for Kopczynski, we deny the other defendants' motion for summary judgment. However, we grant the motion for summary judgment as to Kopczynski for the reasons stated below.

### Facts [2]

On May 10, 1986, plaintiff David Taylor left a Masonic Lodge meeting. He then

---

1. Taylor originally sued the City of Elmhurst but subsequently agreed to its dismissal.

2. Summary judgment is appropriate only where the moving party demonstrates that no genuine issue of material fact exists. The moving party bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 460 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 954, 93 L.Ed.2d 100 (1987). Additionally, we are to draw all reasonable inferences in favor of the non-movant. *DeValk Lincoln Mercury Inc. v. Ford Motor Co.,* 811 F.2d 326, 337 (7th Cir.1987). Defendants seem to have forgotten this very settled rule of summary judgment procedure and have at-

went to a tavern where he had two beers and met Ms. Bernetha Carter and her friend Keith Sanders. Sanders' car was having trouble so Taylor offered to take Carter and Sanders home in his car. Taylor dropped Sanders off at his home and then started to drive Carter home. In making a right hand turn off of Highway 83 in Elmhurst onto North Avenue, Taylor was pulled over by defendant police officer James Kveton for making an improper right hand turn. Taylor pulled off the road and into a shopping center parking lot. Kveton followed and parked his squad car. Kveton approached Taylor's car and asked Taylor for his driver's license, and Taylor handed him the license. Then, at Kveton's request, Taylor got out of his car. Kveton then indicated that Taylor had made an illegal turn and that Kveton wanted Taylor to take a sobriety test. Kveton asked Taylor to perform three alcoholic influence tests. Taylor fully cooperated with Kveton's request and performed the tests. Taylor claims that he was at all times courteous and was not belligerent to Kveton.

After Taylor performed the sobriety tests, he started to walk back to his car. Kveton then indicated that Taylor should move over to the squad car. Taylor cooperated with Kveton's request. When Taylor started toward the squad car, Kveton, without provocation from Taylor, began to push and shove Taylor from behind. Taylor requested that Kveton stop, but Kveton continued to push and shove Taylor toward the squad car. Kveton then began to poke and jab Taylor several times in the rib and stomach area with his PR–24 nightstick, causing Taylor great pain. Taylor again requested that Kveton stop, but Kveton continued to poke and jab Taylor with the

PR–24 nightstick which caused Taylor more pain.

As Taylor approached the squad car, Kveton persisted in jabbing and poking Taylor in the rib and stomach area with the PR–24. At this point, Taylor in an attempt to protect himself grabbed one end of the nightstick. While Taylor was grabbing the nightstick, Kveton began to back pedal quickly attempting to get the stick away from Taylor. Subsequently, Taylor and Kveton fell to the ground with Taylor landing on top of Kveton who landed on his elbow injuring it. A short time later defendant police officers Robert Nicholas and Thomas Turek arrived on the scene shouting racial obscenities and other derogatory comments towards Taylor. Turek and Nicholas then kicked Taylor in the head, at which time Taylor rolled off Kveton. Kveton then hit Taylor in the head area with his nightstick. Turek and Nicholas continued to kick and stomp on Taylor until Taylor was rendered helpless in a semiconscious state of mind. Taylor was then picked up and slammed into the side of one of the defendants' squad cars by Turek and Nicholas and was handcuffed approximately three notches too tight.

Taylor was then thrown into the back seat of one of the defendants' squad cars and driven to the Elmhurst Police Station by one of the defendants whom Taylor believes was Nicholas. At the station Taylor was given a breathalyzer test and fingerprinted. Taylor was in great pain when he arrived at the station but did not request medical attention because he was fearful that if he talked to any of the defendants, he would be beaten further, and he did not know that medical services were available at the police station.[3]

tempted to try this case on paper. There are very clear disputes about what happened the evening David Taylor was arrested, and we are required to view the facts in favor of the non-movant. Accordingly, for purposes of this motion for summary judgment, we have taken all of Taylor's allegations, which are supported by evidence, as true and have discounted contradictory facts set forth by defendants.

3. Defendants contend that there is no evidentiary support for the statement that Taylor "did not request medical attention because he was fear-

ful that if he talked to any of the Defendants, he would be further beaten...." (Plaintiff 12(f) statement, ¶ 22). A review of the referenced deposition pages shows that Taylor said he did not ask for treatment because he "wasn't about to request anything from these guys." (Taylor, Dep. at 47). Although this is not the same as saying he was afraid of further beatings, a fair inference can be drawn that Taylor did not ask because he was afraid of further beatings. Because this is defendants' motion for summary

After processing at the police station, Taylor was taken to the DuPage County Jail where he stayed until his release at 8:00 a.m. the next morning. Two days later, Taylor visited the Glen Ellyn Medical Clinic where his face was found to be very swollen. Taylor had cuts and bruises about his face, knees and hands and handrings (from the handcuffs) around his wrist.

In addition to suing Kveton, Nicholas and Turek, Taylor has sued defendant police officers Michael Campise, James Cerny and Robert Kopczynski because all were present at his arrest and did not attempt to prevent the beating by Kveton, Nicholas and Turek.

### Motion For Summary Judgment

Defendants raise three issues in their motion for summary judgment. First, all defendants contend that they did not, as a matter of law, use excessive force in effecting Taylor's arrest. Secondly, defendants Cerny, Campise and Kopczynski seek summary judgment because Taylor, in his deposition, stated that he could not be certain that Cerny, Campise or Kopczynski ever struck him.[4]

### Excessive Force

■ Prior to the Seventh Circuit's recent decision in *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987), excessive force during arrest claims in this Circuit were evaluated under two different standards depending on plaintiff's constitutional theory. *Compare Bell v. City of Milwaukee*, 746 F.2d 1205, 1278 and n. 87 (7th Cir.1984) (applying Fourth Amendment analysis) (citing *Garner v. Memphis Police Dept.*, 710 F.2d 240, 243 (6th Cir.1983), *affirmed*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)), *with Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985) (applying Fourteenth Amendment analysis), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). For those claims brought pursuant to the Fourth Amendment, "[i]f under the totality of circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights. The objectively unreasonable seizure itself (regardless of the officer's motive or whether any injury inflicted was severe) crosses the constitutional threshold." *Lester*, 830 F.2d at 712. On the other hand, if plaintiff's claim was brought as a violation of the Fourteenth Amendment, a much different test was used to determine unreasonable force. According to this standard, the use of force by a state officer in an arrest was unconstitutional only if it:

(1) caused severe injuries, (2) was grossly disproportionate to the need for action under the circumstances, and (3) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience.

*Gumz*, 772 F.2d at 1400. Taylor brought this action under both the Fourth and Fourteenth Amendments. *See* Complaint, ¶ 18a–b. Prior to *Lester*, we would need to consider Taylor's claim under both standards. However, in *Lester*, the Seventh Circuit held that excessive force in arrest claims should be exclusively determined under the Fourth Amendment standard, reasonableness under the totality of the circumstances. Accordingly, in determining whether defendants are entitled to summary judgment on Taylor's excessive force claim, we need only consider whether, under the totality of the circumstances, defendants unreasonably seized Taylor.

Defendants seem to suggest that we should ignore Taylor's version of what happened the evening he was arrested and consider only their version.[5] Obviously,

---

judgment, the Court, of course, draws all reasonable inferences in favor of the plaintiff.

**4.** Defendant Nicholas also moved for summary judgment on the ground that he was not present during Taylor's arrest. However, Taylor successfully rebutted this denial in his response to the motion for summary judgment. *See* Plaintiff's 12(f) statement, ¶ 13. Accordingly, Taylor

has raised a question of fact as to Nicholas' presence at the arrest.

**5.** One reason defendants suggest we ignore Taylor's deposition is that it is allegedly contradicted by Taylor's eyewitness Ms. Carter. We disagree. Ms. Carter admitted she did not see everything at all times that happened to Taylor.

we cannot. We think it clear, therefore, under Taylor's version of the events that the defendants did not use reasonable force under the totality of the circumstances to seize him. Accordingly, we find there is a genuine issue of fact as to whether defendants used reasonable force in Taylor's arrest.

### Liability of Defendants Cerny, Campise and Kopczynski

■ Defendant Officers Cerny, Campise and Kopczynski contend that they are entitled to summary judgment because Taylor does not know whether they were responsible for the beating he allegedly received. Taylor contends he could not tell who exactly was kicking him into a semiconscious state because he was face down on the asphalt. However, by affidavits and evidence submitted in support of this motion, defendants Cerny and Campise admit they were present during the time period Taylor contends he was beat. Cerny and Campise also admitted that they struggled with Taylor and put the handcuffs on him. Taylor does not believe that Campise and Cerny were the first officers to respond to Kveton's radio request, as they contend. However, their acknowledged presence during the critical time period presents sufficient evidence of their presence, despite Taylor's inability to place them there. Accordingly, there is evidence that Cerny and Campise were present during the period Taylor alleges he was beat by their fellow officers, and they did not intervene to prevent the beating. Under well-settled Seventh Circuit law, a police officer who fails to intervene to prevent summary punishment can be liable under § 1983:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within

his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). *Accord Rascon v. Hardiman*, 803 F.2d 269, 276 (7th Cir.1986) (indicating the Seventh Circuit has not retreated from this general principle of law). Taylor in his deposition alleges that none of the officers present attempted to intervene to prevent his beating. Campise and Cerny do not claim they attempted to prevent Taylor's beating because they contend he was not beaten as he claims. However, because there is a dispute over whether Taylor was beaten, we find that there is a genuine issue of material fact precluding summary judgment in favor of Campise and Cerny. If Taylor was beaten, as he claims, in the presence of Cerny and Campise, their failure to intervene would make them liable under *Byrd*. Accordingly, as to Cerny and Campise, we must deny summary judgment.

■ Officer Kopczynski's motion for summary judgment presents a different picture. Kopczynski's uncontradicted affidavit places him on the scene only after Taylor was in handcuffs. He claims he assisted Officer Turek in searching Taylor but had taken no part in the subduing or the handcuffing of Taylor. According to Taylor's 12(f) statement, the only possible action of excessive force which took place after he was handcuffed was that he was "thrown into the back seat of one of the defendants' squad cars." [6] Taylor's deposi-

---

Further, her testimony was that there were three officers kneeling on Taylor and one was kicking him. (Carter Dep. at 29). A fair inference to be drawn from that is that three officers were holding Taylor on the ground while one kicked him. There is no question whether they

delivered the offending kicks or not, they are responsible for the kicks.

**6.** Arguably, Kopczynski might have had a duty to try and rectify Taylor's three notches too tight handcuffs. There is, however, no evidence that

tion indicates that he was thrown into the squad car by Officers Turek and Nicholas. There is no evidence that Kopczynski had any advance knowledge that Taylor would be thrown handcuffed into the back seat of the car so that Kopczynski would have had a realistic opportunity to attempt to prevent use of excessive force, assuming that it was excessive force.

In a recent Second Circuit case, *O'Neill v. Krzeminski*, No. 87–7272, slip op. (2d Cir. Jan. 29, 1988), the court held that a law enforcement officer could not be held liable for the use of excessive force by failing to intercede and prevent three blows administered by fellow officers because "[t]he three blows were struck in such rapid succession that [he] had no realistic opportunity to attempt to prevent them." *Id.* at 1377. We think that this applies to Kopczynski's situation in the present case. The act of throwing Taylor into the squad car, by his own account, was not a long drawn out process. Accordingly, it was not "an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." *Id.* Because this was the only incident of excessive force Kopczynski would have witnessed, we grant his motion for summary judgment on Count IV, the only count in which Kopczynski was named.

### Qualified Immunity

■ Finally, defendants contend that, even if they used excessive force, they have qualified immunity from liability. "Under this doctrine, government officials performing discretionary functions are shielded from liability for civil damages unless their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Greenberg v. Kmetko*, 840 F.2d 467, 472 (7th Cir.1988) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The

principle behind qualified immunity is that "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

In determining whether a defendant is entitled to qualified immunity, we must conduct a two-part analysis: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question." *Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir.1986). Under the second prong, not only must the law be clearly established in general, it must be clear in relation to the specific facts confronting the public official when [he or she acted]. *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir.1987). This obviously entails a very fact specific inquiry. In applying this test, we must consider the two classes of defendants separately. First, there are the three defendants that Taylor alleges were responsible for the beating he received, Kveton, Turek and Nicholas. Secondly, there are defendants Campise and Cerny, the officers who allegedly failed to stop their fellow officers from beating Taylor.

As to Kveton, Turek and Nicholas, we find that Taylor's evidence sets out a violation of Taylor's Fourth Amendment right to be free from unreasonable seizures. As to Taylor's allegation that defendants Campise and Cerny failed to stop their fellow officers from beating him, Taylor also sets forth a constitutional violation under *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972), and its progeny, *Rascon v. Hardiman*, 803 F.2d 269, 276 (7th Cir.1986).

Next, we need to consider whether the constitutional standards were clearly established so that a reasonable officer would have realized his or her actions were unlawful. Because there are disputed issues

---

Kopczynski was aware that the handcuffs were too tight. Accordingly, he could not be held liable for failure to intervene as to the handcuffs. *Cf. Rascon v. Hardiman*, 803 F.2d 269, 276 (7th Cir.1986) (mere negligence in failing to

perceive that other officers were inflicting illegal summary punishment rather than using lawful force to subdue a violent inmate does not support liability under § 1983).

of fact that go to the heart of the excessive force claims,[7] we can only grant summary judgment on qualified immunity if, under plaintiff's version of the facts, no reasonable officer would have believed his actions were unlawful or if, under the undisputed facts viewed in the light most favorable to plaintiff, no reasonable officer would have believed his actions were unlawful. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir.1987).

It is clear that, under Taylor's version of the facts, both groups of defendants are not entitled to qualified immunity. Under his version, no reasonable officer would have believed that his actions in kicking an unresisting Taylor or in watching his fellow officers beat Taylor were lawful under the Fourth Amendment reasonableness standard. Nor can we conclude that, under the undisputed facts viewed in the light most favorable to Taylor, the officers are entitled to qualified immunity at this stage of the case. The key facts that form the basis of Taylor's excessive force claim are disputed. So, a consideration of all the undisputed facts gets us nowhere. Accordingly, we cannot grant summary judgment in favor of defendants on the grounds of qualified immunity.

## Conclusion

Because we find there are disputed issues of material fact regarding the nature of the force used to arrest Taylor, we must deny all defendants', except for Kopczynski's, motion for summary judgment. Because of these disputed fact issues, we cannot find that defendants used only reasonable force in arresting Taylor, or that under the circumstances of this case, the officers could have reasonably, but mistakenly, concluded their actions were lawful. Accordingly, we deny defendants Kveton, Nicholas, Campise, Cerny and Turek's motion for summary judgment.[8] However, because we find as a matter of law that Kopczynski did not have a realistic opportunity to prevent the only incident of excessive force he could have witnessed, we grant his motion for summary judgment. It is so ordered.

---

**7.** Some disputed issues of fact, for example, are whether Taylor became belligerent and refused to walk back to Kveton's squad car, whether Taylor resisted Kveton's attempts to search him, whether Taylor swung his arms at Kveton prior to grabbing the nightstick, and whether Taylor resisted the responding officers' attempt to subdue him when he fell on Kveton.

**8.** We make one final observation regarding this motion for summary judgment. Federal Rule of Civil Procedure 11 requires that a motion be well grounded in fact and warranted by existing law or a good faith argument for extension of the law. Defendants should have been patently aware of the disputed issues of fact present in this case after taking Taylor and Carter's depositions. Yet, they persisted in filing this motion for summary judgment which requires that there be no genuine issue of material fact. When the contested issue concerns the use of excessive force, it is all the more obvious that summary judgment will be inappropriate. Under Rule 11, parties can no longer file motions for purely strategic reasons. Defendants' motion for summary judgment wasted not only plaintiff's resources, but those of this Court as well. For this reason, should plaintiff so move, we will consider the imposition of sanctions at the conclusion of this trial against all defendants for violation of Rule 11.