Scott ZEMPEL, Plaintiff,

v.

Officer Michael CYGAN, Officer Scott Peters, Officer Dean Danelski, Cities and Villages Mutual Insurance Company, and Employers Health Insurance Company, Defendants.

No. 94–C–989.

United States District Court,
E.D. Wisconsin.

March 1, 1996.

John C. Peterson, Robinson, Robinson, Peterson, Berk & Cross, Appleton, WI, for Plaintiff.

Judith Schmidt–Lehman, Assistant City Attorney, Green Bay, WI, for Defendants Cygan, Peters, Danelski and CVMIC.

Margaret E. Ebner, Fellows, Piper & Schmidt, Milwaukee, WI, for Defendant Employers Health Insurance Company.

### DECISION AND ORDER

WARREN, District Judge.

Before the Court is the Recommendation of Magistrate Judge Aaron E. Goodstein on the defendants' Motion for Summary Judgment. On November 16, 1995, Magistrate Judge Goodstein recommended that the defendants' Motion for Summary Judgment be denied. On November 29, 1995, the defendants filed an Objection to the Magistrate Judge's Recommendation pursuant to 28 U.S.C. § 636(6)(1)(b) and Local Rule 13.03, requesting a *de novo* review of the Magistrate Judge's decision. For the following reasons, this Court adopts Magistrate Judge Goodstein's Recommendation, and in addition denies defendants' Motion to Dismiss defendant Officer Peters.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 1989, Scott Zempel, was placed under arrest due to a loud, boisterous and profane verbal exchange with Green Bay police following a Green Bay Packers football game. The facts regarding the level of force utilized to effectuate that arrest are both disputed and undisputed, and facts regarding the manner in which Mr. Zempel was placed in a holding cell are disputed. On November 16, 1995, following briefing and submission of affidavits and medical records, Magistrate Judge Goodstein recommended denial of defendants' Motion for Summary Judgment on the basis of qualified immunity. Furthermore, in defendants' Objection to the Magistrate's Recommendation, defendants for the first time move to dismiss Officer Peters individually. The Magistrate Judge's Recommendation has been objected to by the defendants and is ready for review and resolution by this Court.

## II. STANDARD OF REVIEW

A district court must review *de novo* the recommendations of the Magistrate to which either party timely objects. 28 U.S.C. § 636(b)(1)(C); *United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 2411–13, 65 L.Ed.2d 424 (1980). The Court may review *de novo* any other aspect of the Recommendation as it sees fit. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986) ("[T]he statute should be read as permitting modifications and *de novo* determinations by the district judge at all times but *mandating de novo* determinations when objections are raised.") (emphasis in original) (citations omitted). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Although in the absence of such objections the Court need not make any review, "the better practice" is to afford "some level of review" to dispositive issues, even though a *de novo* determination is not required. *Henderson v. Carlson,* 812 F.2d 874, 878 (3d Cir.), *cert. denied,* 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987). The Court may adopt the Recommendation in its entirety, or in part; the Court retains final authority of

judgment in the case. *Delgado,* 782 F.2d at 82.

### III. ANALYSIS

The defendants seek summary judgment based upon the doctrine of qualified immunity on behalf of Officers Cygan, Peters and Danelski. They argue plaintiff's proof does not establish a material factual dispute, and that the law regarding the use of excessive force in effectuating arrest was not clearly established as of the date of arrest, October 8, 1989. Furthermore, defendants argue that Officer Peters must be dismissed from this action because there is no evidence against him on the record.

**A. Whether the Non-moving Party Has Established a Material Factual Dispute Precluding Summary Judgment.**

Summary judgement is appropriate where the non-moving party has failed to set forth specific facts showing there is a genuine issue for trial. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In reviewing the Magistrate Judge's Recommendation *de novo,* "all inferences from the facts must be drawn in the light most favorable to the non-moving party." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1992)). "At the summary judgment stage, the defendants cannot prevail if [plaintiff] can present a version of the facts that is supported by the evidence and under which defendants would not be entitled to qualified immunity." *Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir.1992).

■ The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Baxter v. Vigo County School Corp.,* 26 F.3d 728, 737 (7th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

Qualified immunity is a judicially created doctrine intended to balance the citizen's statutory or constitutional right against the reality that few "persons will enter public service if such service entails the risk of personal liability for one's official decision." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994). As such, the doctrine provides an *"immunity from suit* rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original)). The availability of qualified immunity "turns on the 'objective legal reasonableness' of the actions taken by the defendants." *Hall,* 957 F.2d at 404 (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)).

■ When immunity from suit is sought by invocation of the doctrine of qualified immunity, the plaintiff has the burden of establishing the existence of a clearly established right. *Liebenstein v. Crowe,* 826 F.Supp. 1174, 1183 (E.D.Wis.1992) (citing *Abel v. Miller,* 824 F.2d 1522, 1534 (7th Cir.1987)). That burden requires the plaintiff to "offer either a closely analogous case or evidence that the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts." *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir.1993) (citing *Rice v. Burks,* 999 F.2d 1172, 1173–74 (7th Cir.1993)). *See also McDonald v. Haskins,* 966 F.2d 292 (7th Cir.1992) (holding a gun to the head of a child and threatening to pull the trigger is plainly excessive force, so closely analogous case is not needed to put police officer on notice). Examination of a summary judgment motion based on the doctrine of qualified immunity requires a two-part analysis: (1) Does the alleged conduct violate the plaintiff's constitutional rights?, and (2) If those rights were violated, were the constitutional standards clearly established at the time in question? *Sherman v. Four County Counseling Center,* 987 F.2d 397, 401 (7th Cir.1993).

■ The facts before the Court regarding the plaintiff's conduct prior to being taken

into custody are undisputed: Zempel admits making an inappropriate finger gesture to the police just prior to the physical altercation. However, there are numerous facts, specific to the degree of force utilized by the officers in effectuating arrest and later placing Zempel in detention, that remain vigorously disputed. Defendants' Objection to the Magistrate's Recommendation (Objection) does not fully discuss the plaintiff's allegations, and thus mischaracterizes those allegations as merely conclusory. In discussing the affidavit of Mr. Terry LaCanne, defendants quote LaCanne's affidavit as referring to police conduct which "appeared to have happened." (Objection at 4.) Significantly, that same discussion omits that what "appeared" to LaCanne was "hitting or kicking." (LaCanne Aff. ¶ 7.) Furthermore, LaCanne's affidavit states that he saw several police officers "attacking" Zempel, that it also appeared that Zempel was unconscious while on the ground, and that LaCanne told the police to stop "beating" Zempel. (*Id.* at ¶ 3.) Finally, LaCanne's affidavit specifically and unequivocally states that when Zempel was brought into the cell which LaCanne already occupied, the officers "slammed his face into the door and threw him into the room against a wall." (*Id.* at ¶ 9.)[1]

Although it is true that the plaintiff describes the initial altercation as an "attack" without specifics as to whether he was kicked or beaten, he also alleges he was rendered unconscious and any specificity as to this time period would contradict such an assertion. (Zempel Aff. ¶¶ 6–8.) During a period of alleged consciousness, Zempel is explicit in his description of police conduct, noting "there was a person with his weight on my back holding a bar or a club under my chin pulling back my head." (*Id.* at ¶ 8.) The plaintiff describes the manner in which he was deposited into a holding cell with particularity. Zempel alleges that while he was

restrained the officers "smashed" his "face into the door," (*Id.* at ¶ 9), and that afterwards he was "thrown into the cell and against a wall." (*Id.* at ¶ 10.) Thus, it is clear to this Court that the record is replete with disputed material facts that go to the heart of the excessive force claim.

■ As correctly noted by the Magistrate Judge, all claims of excessive force by law enforcement officials are analyzed under the Fourth Amendment. (Recommendation at 8.) (citing *Lester v. City of Chicago*, 830 F.2d 706, 710 (7th Cir.1987); *Liebenstein*, 826 F.Supp. at 1180; *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). As previously discussed, a two-part analysis is necessary to determine whether the doctrine of qualified immunity is available to the defendants.

### 1. Does the Alleged Conduct Violate the Plaintiff's Fourth Amendment Rights?

■ When effectuating an arrest, the plaintiff's Fourth Amendment rights are intact if a court finds that an officer's conduct was "objectively reasonable" in light of the surrounding circumstances. *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872. Such a determination involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Lester*, 830 F.2d at 711 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985)). The surrounding circumstances which the Court should consider include, but are not limited to, the crime's severity, whether the suspect poses an immediate threat to the officers or to others, and whether the suspect is resisting arrest or is fleeing arrest. *Id.*

---

1. Defendants' same discussion erroneously implies that it is necessary for the Court to examine the intentions behind the officers' conduct. (Objection at 4) ("The affidavit of Mr. Terry LaCanne cannot be used to create even the inference of the officers kicking or otherwise *intentionally harming* ... the plaintiff.") (emphasis added). Such discussion only muddies the issue of whether material facts are in dispute. As both defen-

dants' original Motion for Summary Judgment and their Objection note, since 1987, the Seventh Circuit has required an objective examination of the reasonableness of an officer's conduct under the Fourth Amendment. *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir.1987). *See also Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

The undisputed facts indicate that Zempel, accompanied by Terry LaCanne, went to the police substation within Packer Stadium to inquire about the status of a third-party. Both Zempel and LaCanne had been drinking during the football game. The plaintiff repeatedly and aggressively demanded the officers' attention despite being told that his inquiry regarding the previously arrested third-party could not be answered; Zempel had to go to another police facility to find the party for whom he searched. Zempel admits making an inappropriate finger gesture to the officers upon his attempted departure from the police substation. Although the crime of disorderly conduct is a relatively minor one, and perhaps not uncommon conduct in view of the potential for alcohol induced rowdy behavior at a football game, charged with the game attendees' safety, it is not unreasonable for police officers to arrest one who is intoxicated and demonstrates inappropriate conduct toward them. However, the Court must consider the plaintiff's version of disputed facts supported by evidence, and reasonable inferences therefrom, in a light most favorable to the plaintiff. Although securing an intended arrestee departing an area from behind is not unreasonable, hitting such a person and bringing him to the ground is unreasonable if the arrestee is not attempting flight or struggling. Attacking, beating, kicking or in any way battering an allegedly unconscious person is not reasonably necessary to effectuate that person's arrest. The record does not reflect that Zempel was an immediate threat to the safety of the officers or other game attendees. Neither does it indicate, when taken with all reasonable inferences favorable to the plaintiff, that Zempel resisted arrest once pinned to the ground.

Zempel alleges he was handcuffed and provided no resistance to the officers when conducted to the holding cell. Under such circumstances, depositing a restrained arrestee in a holding cell, smashing his face against a door and then throwing him into the cell wall, as the plaintiff alleges, cannot be characterized as reasonable or necessary force. The very factors which the Court is required to consider in establishing whether excessive force was employed are in dispute, and consequently preclude summary judgment.

### 2. If the Plaintiff's Fourth Amendment Rights were Violated, were the Constitutional Standards Clearly Established at the Time of the Violation?

The finding that a law enforcement official's conduct was unreasonable, and therefore, constituted excessive force does not end the Court's inquiry into whether the defendants may avail themselves of qualified immunity. The Court must now examine whether the right in question was clearly established with sufficient particularity so as to put "potential defendants on notice that their conduct is probably unlawful." *Sherman*, 987 F.2d at 401. The Court agrees with the Magistrate that "precedent from the Supreme Court or the Seventh Circuit is not required." (Recommendation at 12.) Instead, "[i]n the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established." *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir.1987) (quoting *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir.1985).

In 1987, the Seventh Circuit held that all excessive force in arrest claims were to be governed by an objective, reasonableness standard under the Fourth Amendment. *Lester*, 830 F.2d at 713. From that point forward, a police officer's use of force in arresting a suspect violated the Constitution if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to effectuate the arrest. *Id.* *Lester* relied significantly on *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Although *Garner* expressly dealt with the issue of deadly force, through its utilization of a totality of circumstances analysis, the case implicitly directed that "police use of less than deadly force would violate the Fourth Amendment if not justified under the circumstances." *Lester*, 830 F.2d at 711 (citing *Kidd v. O'Neil*, 774 F.2d 1252, 1256 (4th Cir.1985)).

The fact specific nature of the totality of circumstances inquiry begs the question of

how law enforcement officials can be effectively put on notice regarding what constitutes reasonable force. Defendants' properly note that in order to ascertain the constitutional standards clearly established at the time of the alleged violation it is the plaintiff's burden to "cite analogous cases which were decided before the alleged violation occurred." (Objection at 2.) Defendant's put much stock in their argument that plaintiff has presented no case in which an arrestee was "caught from behind while fleeing an officer and brought to the ground," in violation of the Fourth Amendment. (*Id.*) They also affirmatively assert that neither the Seventh Circuit or the Supreme Court has decided a case with the specific facts so quoted. (*Id.*)

Defendants' Objection both misconstrues the facts before this Court and the applicable legal standard. First, the facts before the Court must be viewed in the light most favorable to the plaintiff. As such, the facts before the Court differ from those articulated by the defendants. Here, the arrestee was departing the area but not fleeing, hit from behind with enough force to render him unconscious, beaten while providing no resistance, and later smashed into a cell door and wall while restrained by handcuffs. If the plaintiff is to cite analogous cases, it is these facts it must consider. Second, the standard regarding analogous case law requires only analogous, not exactly duplicative facts.

 Furthermore, defendant's objection to plaintiff's lack of citation to analogous case law ignores the plaintiff's options in meeting its burden to defeat an assertion of qualified immunity. The plaintiff is required to "offer either a closely analogous case *or evidence that the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guid-*

ance *from the courts.*" *Casteel,* 3 F.3d at 1053 (citing *Rice,* 999 F.2d at 1173–74 (7th Cir.1993) (emphasis added). Any other approach would allow police officers to be "shielded from liability just because their excessive use of force happens to be original." *Rice,* 999 F.2d at 1174. Here, when the facts are examined in a light most favorable to the plaintiff, it is but a small step to conclude that battering an unconscious person, and later when that person is restrained, "smashing" his head into a door and body into a wall is patently violative of the Fourth Amendment's prohibition of excessive force. *See also Benson v. Allphin,* 786 F.2d 268, 276 n. 18 (7th Cir.1986) ("[t]here may, of course, be a situation in which the defendant's actions are so egregious that the result . . . will be a foregone conclusion, even though prior caselaw may not address the specific facts at issue.").[2]

The Court holds that if plaintiff's version of the facts were found persuasive by a jury, such conduct, would be patently unreasonable under the Fourth Amendment. Therefore, the Court adopts the Magistrate Judge's conclusion that the law concerning excessive force in arrest was clearly established at the time of the alleged constitutional violation.

### B. *Whether Defendant Officer Peters Should be Dismissed.*

 As part of their Objection to the Magistrate's Recommendation, defendants' move to dismiss Officer Peters from this case. Objecting to the Magistrate's "tacit conclusion that all officers must remain in the case," (Objection at 5), the defendants correctly note that affidavits submitted by plaintiff do not identify by name which officers allegedly violated plaintiff's rights. Defendants' also argue that Officer Peters had

---

**2.** The Court also takes note of a sampling of analogous case law: *Taylor v. Kveton,* 684 F.Supp. 179 (N.D.Ill.1988) (summary judgment denied when plaintiff's versions of facts alleged use of night stick and kicking non-resisting arrestee, as well as beating of arrestee when semiconscious); *Hansen v. Black,* 885 F.2d 642 (9th Cir.1989) (using *Graham* analysis, summary judgment improper where handcuffs placed on non-resisting arrestee in abusive manner resulted in physical injury); *Kidd v. O'Neil,* 774 F.2d 1252

(11th Cir.1985) (reversed and remanded due to lower court's failure to evaluate objective reasonableness of plaintiff's claims of excessive force in arrest by being kicked, and beaten while handcuffed); *Lester,* 830 F.2d 706 (remand for application of objective reasonableness test where, after plaintiff loudly criticized police conduct while in police station, excessive force claimed due to alleged kneeing of plaintiff in back and handcuffing her tightly despite no resistance to arrest).

no "involvement in the arrest of plaintiff, no involvement in the placing of plaintiff in the cell block, and no involvement whatsoever with plaintiff in this case." (*Id.*)

However, "omissions as well as actions may violate civil rights." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994). The Court will not "condone the actions of the officer who willfully 'looks the other way' and permits action which he knows or should know is unlawful." *Rascon v. Hardiman*, 803 F.2d 269, 277 (7th Cir.1986). If an officer is present but fails to intervene to prevent other law enforcement officers from violating a citizen's constitutional rights, that officer is liable under § 1983 if that officer had reason to know that (1) excessive force is being used, (2) the arrest is unjustified, or (3) any constitutional infringement has been committed by another law enforcement official *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang*, 37 F.3d at 285 (citing *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)) (emphasis in original).

The Complaint names Officers Cygan, Peters and Danelski and therein refers to all police conduct collectively. The affidavit of plaintiff refers to an attack by "several uniformed officers." (Zempel Aff. ¶ 6.) Witness Terry LaCanne's affidavit refers to an attack by several police officers, (LaCanne Aff. ¶ 3) and hitting and kicking by "the police officers." (*Id.* at ¶ 7.) Although Officer Peters is not identified by name, reviewing the facts in a light most favorable to the non-moving party, those facts do not exculpate Officer Peters.

Officer Peters asserts he was merely present during the plaintiff's arrest. However, even if Officer Peters' witnessed rather than participated in the arrest of Scott Zempel, that fact alone does not warrant his dismissal from this action. Since 1972, the Seventh Circuit has clearly established that liability will be found for both misfeasance and nonfeasance of those acting under color of law. *Byrd v. Brishke*, 466 F.2d 6, 10 (1972). Assuming the force used to arrest the plaintiff was excessive, it is well settled that "one who is given the badge of authority of a police officer may not ignore the duty imposed by

his office and fail to stop other officers" from violating the constitutional rights of citizens. *Id.* at 11. *See White v. Rochford*, 592 F.2d 381, 383 (7th Cir.1979) (officers liable for exposing children to danger by leaving them alone in a car parked on highway after arresting their guardian); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986) (remanded for determination on whether defendant officer had opportunity to intervene to prevent unprovoked beating by fellow officer); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) (not necessary to demonstrate that officer actively participated in striking plaintiff), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983).

According the Officer Peters' own affidavit, he observed fellow officers bringing Zempel to the ground and LaCanne's objections to the "altercation". (Peters Aff. ¶¶ 9–10.) Viewing that altercation under plaintiff's facts, Peters failed to intervene when fellow officers used unnecessary force to detain an arrestee who was not fleeing nor resisting arrest. In fact, instead of intervening, Officer Peters arrested LaCanne because he objected to the other officers' treatment of Zempel. (Peters Aff. ¶ 11.) Reviewing the facts, albeit slim, concerning Officer Peters in a light most favorable to the non-moving party, there is no reason to find that Officer Peters was not duty bound to prevent the alleged excessive force used in plaintiff's arrest if a realistic opportunity was available. As such, summary judgment dismissing Officer Peters is unwarranted.

## IV. CONCLUSION

After careful review of the entire record and applicable law, the Court is in agreement with the legal and factual findings of Magistrate Judge Goodstein and adopts the Recommendation.

In light of the Court's ruling, the defendants' Motion for Summary Judgment is **DENIED**. Furthermore, the Motion to dismiss defendant Officer Peters is **DENIED**.

Finally, The Court requests the appearance of counsel for the parties at a scheduling conference set for *9:00 o'clock a.m. on Friday, March 15, 1996,* in Courtroom 390,

Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202.

**SO ORDERED.**

