Della HALL, as Guardian of the Estate and Person of Clifford R. Howard, Jr., Plaintiff–Appellee,

v.

Richard W. RYAN, R. Jones, Patrick Vaughan, John Mickler and P. Rincones, Decatur Police Officers, Defendants–Appellants.

No. 91–1607.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1991.

Decided Feb. 28, 1992.

Gary F. Geisler (argued), Asher O. Geisler, Jeffrey S. Geisler, Geisler, Waks & Geisler, Decatur, Ill., for plaintiff-appellee.

Karen L. Kendall, Heyl, Royster, Voelker & Allen, Peoria, Ill., Patrick J. Londrigan (argued), Heyl, Royster, Voelker & Allen, Springfield, Ill., for defendants-appellants.

Before CUMMINGS and CUDAHY, Circuit Judges, and WISDOM, Senior Circuit Judge.[*]

CUMMINGS, Circuit Judge.

On May 4, 1986, Clifford Howard, Jr., attempted suicide while being held at the City of Decatur police department. He remains in a comatose state as a result of his suicide attempt. In October 1988, Della Hall, as guardian of Howard's estate and person, filed her two-count first amended complaint brought under 42 U.S.C. § 1983

[*] The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

against the City of Decatur and five of its police officers. Count I alleges that four Decatur police officers, Sergeant Richard W. Ryan, Officer R. Jones, Sergeant John Mickler and clerk-dispatcher Paula Rincones violated Howard's right to Due Process under the Fourteenth Amendment. Count II, also brought under the Due Process Clause of the Fourteenth Amendment, is against Chief of Police Patrick Vaughan[1] and the City of Decatur and alleges additionally that Vaughan and the Decatur police department failed to maintain proper procedures for handling prisoners like Howard.[2] The individual defendants appeal the district court's decision to deny their motion for summary judgment on the basis of qualified immunity.

## I.

On May 4, 1986, at 2 A.M., Officers Roger Ryan[3] and R. Jones noticed Howard sitting in his car with the motor running in the middle of the street blocking traffic. When Ryan approached the car Howard turned off the engine. He told Officer Ryan that he could not start the car, but Ryan was able to start it immediately. Ryan found a syringe in Howard's shirt pocket and also learned that Howard's license was revoked. He therefore arrested Howard and drove him to the Decatur police department for booking. Howard did not act unusual or intoxicated while talking to the police and was quiet in the car during the ride to the police department.

Howard's behavior changed markedly upon arriving at police headquarters. He became uncooperative and refused to assume the search position and had to be tackled. Officer Jones testified in his deposition that Howard was excited and belligerent. Howard took off his shoes and threw them across the booking room or subsequently across a holding cell where Howard began urinating on the floor (despite the presence of a toilet) and swearing at the officers. He also repeatedly flushed the toilet in the cell, requiring shift commander Sergeant John Mickler to turn off the water going into his cell. At 3 A.M., approximately thirty minutes after Howard arrived at the police station, dispatcher Paula Rincones[4] found him hanging in his cell by his undershorts. Howard remains in a permanent comatose state as a result of his suicide attempt. The defendants took no steps to offer Howard psychiatric assistance or to maintain continuous observation of him.[5]

Howard was no stranger to the Decatur police department. His Decatur arrest record reveals 28 arrests over the past 14 years. He was detained in the Decatur holding cell nine times prior to May 4, 1986. On August 30, 1985, approximately nine months before the incident in question, Howard was arrested by Decatur police officers at his home armed with a gun and

---

**1.** Vaughan's name is spelled "Vaughn" on Hall's complaint and our docket sheet. Vaughan's deposition testimony makes clear, however, that his name is spelled "Vaughan" and we therefore use that spelling here.

**2.** The judge granted Decatur's motion to dismiss for failure to sufficiently allege a policy or custom actionable under Section 1983. Plaintiff does not challenge this ruling.

**3.** Plaintiff alleges that defendant Sergeant Richard Ryan was one of the arresting officers who failed to offer psychiatric assistance to Howard or to maintain observation of him in custody (R. 19 at 2–3), but the deposition of his brother, Officer Roger Ryan, not a defendant, shows that he was the arresting officer who helped place Howard in the jail cell (R. 48 at 7). Presumably this error will be corrected as the litigation proceeds under Rule 15(c) of the Federal Rules of Civil Procedure. Unless otherwise indicated,

the name Ryan in the remainder of this opinion will refer to Roger Ryan.

**4.** Rincones' deposition was taken under the name Paula J. Shane.

**5.** The acts of defendants were said to violate the Illinois Municipal Jail and Lockup Standards providing that:

a. No prisoner with a known history of a mental disorder or mental defect, or who shows evidence of such condition shall be bound in any municipal jail or lockup.
b. In the event such type prisoner is received, he shall be afforded protective custody and individualized supervision until such time as he is transferred to another facility.
c. Such prisoner shall immediately be referred for appropriate professional study and diagnosis.

threatening to commit suicide. At that time, Howard was taken directly to a hospital and not to jail. The August 30 arrest report states that Howard has attempted suicide several times.

Defendant Chief of Police Patrick Vaughan and other Decatur police officers handled the August 30 arrest. No officers involved in the May 4 arrest were personally involved in the August arrest. Roger Ryan's brother as well as his stepfather, however, were both personally involved in the August arrest. In addition, the local newspaper carried an article about the incident. According to the complaint, Howard's family members met with Chief Vaughan a few months before the May 4, 1986, occurrence to advise him of Howard's mentally disturbed and suicidal condition. At this meeting the family members provided Vaughan with pertinent documentation regarding Howard's condition.

The defendants' summary judgment motion argues that they were entitled to qualified immunity on the ground that the law at the time of the incident "did not clearly establish the right to have officers diagnose pre-trial detainees' * * * condition as prone to suicide and to take extraordinary measures to restrain pre-trial detainees," and that there was no clearly established right "to a suicide prevention facility for pre-trial detainees." This resulted in an order from the district court denying the motion for summary judgment, citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523, and *Walsh v. Mellas*, 837 F.2d 789 (7th Cir.1988), certiorari denied, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933. Judge Baker noted that qualified immunity shields government officials performing discretionary functions from civil liability if their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. However, he concluded that liability is to be imposed where the unlawfulness is apparent under preexisting law, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, and *Joseph v. Brierton*, 739 F.2d 1244 (7th Cir.1984). The district court concluded that as in *Joseph* and *Estelle v. Gamble*,

429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, the standard of conduct imposed on defendants with respect to the care of people in custody was clearly established, so that the police officers' qualified immunity defense failed. We affirm.

II.

■ *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411, establishes our jurisdiction over this appeal under the collateral order doctrine. Because the qualified immunity defense includes immunity from the burdens of trial and not just immunity from liability, we review denials of summary judgment based on the properly raised defense of qualified immunity. *Id.* at 526–527, 105 S.Ct. at 2815–16. The question on appeal is whether a genuine issue of material fact exists that precludes the defendants from claiming qualified immunity. See Fed.R.Civ.Proc. 56(b). We interpret the facts in the light most favorable to plaintiff Hall, the non-movant, when supported by the evidence.

■ Qualified immunity turns on the "objective legal reasonableness" of the actions taken by the defendants. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523. Actions taken by local officials are considered objectively unreasonable only if the right allegedly violated is clearly established in· a sufficiently particularized sense at the time of the actions at issue. *Id.* at 640, 107 S.Ct. at 3039; *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986) ("The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful."). Qualified immunity is a legal issue, but is one which, because of the particularity requirement, is bound up in the facts of a particular case. *Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir.1987) (en banc). At the summary judgment stage, the defendants cannot prevail if Hall can present a version of the facts that is supported by the evidence and under which defendants would not be entitled to qualified immunity.

■ It was clearly established in 1986 that police officers could not be deliberate-

ly indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk. Deliberate indifference to a prisoner's medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251. Although pre-trial detainees cannot be punished because they have not yet been found guilty, *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447, the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protection available to a convicted prisoner. *Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605.

■ The district court properly relied upon *Joseph v. Brierton*, 739 F.2d 1244 (7th Cir.1984), in denying summary judgment here. The plaintiff in *Joseph* was the administrator of the estate of a prisoner who died of a heart attack while in prison. The week before his death, the prisoner behaved in an increasingly bizarre fashion, tearing off his clothes, spreading feces in his cell, and shouting that he was Moses and Christ. The Court stated that it was a jury question whether prison officials acted with "wilful neglect" with regard to the prisoner's psychological needs, *id.* at 1246, but reversed the jury verdict for the defendant on the grounds of various trial errors prejudicial to the plaintiff. Applying the wilful neglect standard to cases involving prisoners in need of psychological care was deemed clearly established, not simply because of a right to medical care but also because of the principle that

> prison officials are not entitled to an objective good faith defense * * * if they are aware of a risk of injury to an inmate and nevertheless fail to take appropriate steps to protect the inmate from that known danger.

*Id.* at 1250. A plaintiff with known suicidal tendencies obviously falls within this rule.

Here, as in *Joseph*, Hall has raised a jury question whether the defendants showed wilful neglect (which we equate with deliberate indifference) in regard to Howard. This is not because Howard's behavior on the night in question, standing by itself, was so bizarre as to put the defendants on notice that he would probably commit suicide. Instead, Hall has raised a genuine issue of material fact whether the defendants actually knew that Howard was a serious suicide risk, based not only on Howard's behavior that day but also on Howard's past encounters with the Decatur police department. Decatur police had arrested Howard 28 times and had detained him 9 times prior to May 4, 1986. Howard had been involved in a well-publicized suicide threat in August 1985, a little over 9 months prior to the incident in question. Although none of the defendants personally involved in the May arrest were involved in the August incident, defendant Ryan's brother and stepfather, as well as defendant Chief of Police Vaughan were involved in the August incident. In addition, the arrest report from the August incident contains the notation that defendant had attempted suicide several times in the past. There is a genuine issue of material fact whether the defendants involved in the May arrest knew of Howard's suicidal history, or were recklessly indifferent in failing to consult his file after observing his wild behavior—cursing, flinging his shoes, urinating in his cell, and repeatedly flushing the toilet there.

Defendants rely heavily on this Court's decision in *State Bank of St. Charles v. Camic*, 712 F.2d 1140 (7th Cir.1983), certiorari denied, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686. *Camic* also involved a suicide attempt by a pre-trial detainee who was behaving in a "freaky" manner. *Id.* at 1143. The court in *Camic* declined to reach the question whether prisoners have a constitutional right to be protected from suicide, but noted that neither the Supreme Court nor this Court had expressly held so at that point. *Id.* at 1143 n. 3. The reasoning in *Camic* is quite consistent, however, with our holding today. The lack of knowledge regarding the plaintiff's suicidal tendencies on the part of the *Camic* defendants was stressed more than once:

> [N]one of the allegations raises a question of material fact as to whether the defendants had knowledge of, or even particular reason to suspect, suicidal

tendencies on the part of [the plaintiff] * * *. [D]efendants' lack of knowledge and their exercise of reasonable precautions precludes any possibility of their actions being characterized as deliberate or callous indifference.

*Id.* at 1146. In contrast, Hall has raised a genuine issue of material fact regarding the defendants' knowledge of Howard's suicidal tendencies. In addition, the *Joseph* decision, although not dealing specifically with a suicide, fairly establishes a prisoner's right to be protected from self-destructive tendencies—in effect deciding (2 years before Howard's suicide attempt) the question that *Camic* expressly reserved. Therefore *Camic* and *Joseph* together clearly established in our Circuit before 1986 the rule that prison officials will be liable under Section 1983 for a pretrial detainee's suicide if they were deliberately indifferent to a substantial suicide risk.[6]

The allegations of the first amended complaint, the depositions and pre-existing law, considered together, nullify the defense of qualified immunity in this case. At trial the defendants may be able to adduce various defenses, but they may not now avoid suit under the qualified immunity doctrine on the record as it now exists.

Judgment affirmed.

---

**6.** Case law from other Circuits confirms the correctness of this rule. *Elliott v. Cheshire Co.,* 940 F.2d 7, 10–11 (1st Cir.1991) ("The key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies"); *Colburn v. Upper Darby Township,* 838 F.2d 663, 669 (3rd Cir.1988) ("If such officials know or should know of the particular vulnerability to suicide of an inmate then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability"), certiorari denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808; *Belcher v. Oliver,* 898 F.2d 32, 34–35 (4th Cir. 1990) (applying deliberate indifference standard to a pre-trial detainee's suicide); *Partridge v. Two Unknown Police Officers of Houston,* 791 F.2d 1182, 1187 (5th Cir.1986) (noting that failure to take steps to prevent a suicidal detainee from harming himself may constitute a due process violation); *Cabrales v. County of Los Angeles,* 864 F.2d 1454 (9th Cir.1988) (affirming jury verdict finding defendants deliberately indifferent with regard to prisoner who had previously attempted suicide in his cell), vacated, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 reinstated, 886 F.2d 235, certiorari denied, 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 966; *Popham v. City of Talladega,* 908 F.2d 1561, 1563 (11th Cir.1990) ("deliberate indifference has become the barometer by which suicide cases involving convicted prisoners as well as pre-trial detainees are tested").

*Danese v. Asman,* 875 F.2d 1239 (6th Cir. 1989), certiorari denied, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 on which defendants rely is not to the contrary. There the police department had no prior notice of the plaintiff's suicidal tendencies. In addition, the conduct in question there took place in 1982, four years before the acts in question here.