In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 16-3560 & 16-3644

ESTATE OF RYAN L. CLARK,

*Plaintiff-Appellee*,

*v.*

BRUCE WALKER and TINA KUEHN,

*Defendants-Appellants*.

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 14-C-1402 — **Charles N. Clevert, Jr.**, *Judge*.

ARGUED MARCH 28, 2017 — DECIDED JULY 26, 2017

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Ryan Clark committed suicide five days after entering the custody of the Green Lake County Jail in Wisconsin. The officers on duty at the time of his death did not know that Clark had a high risk of committing suicide. When he entered the jail, however, he was assessed as having a maximum risk of suicide. The intake staff who were aware of that risk—Officer Bruce Walker and Nurse Tina Kuehn—had not initiated the jail's suicide prevention protocol.

Clark's estate brought this suit under 42 U.S.C. § 1983 alleging that Walker and Kuehn violated Clark's Eighth Amendment rights by acting with deliberate indifference toward his serious risk of suicide.

Walker and Kuehn moved for summary judgment. They argued there was insufficient evidence to allow a jury to find deliberate indifference, and they invoked qualified immunity. In a detailed order, the district court denied their motions. See *Estate of Clark v. County of Green Lake*, No. 14-C-1402, 2016 WL 4769365 (E.D. Wis. Sept. 12, 2016). The court found numerous issues of material fact regarding Clark's suicide risk, the defendants' knowledge of that risk, and who was responsible for initiating the suicide protocol (Walker or Kuehn). The court also rejected defendants' qualified immunity arguments. As a preliminary matter, the court determined that Kuehn was unable to invoke qualified immunity because she was a private contractor, not a government employee. On the merits, the court ruled that both defendants were not shielded by qualified immunity because it was clearly established in the Seventh Circuit that inmates have the right to be free from deliberate indifference to a known risk of suicide. Both defendants appealed.

Because this is an appeal from a denial of summary judgment, our jurisdiction is quite limited. We have jurisdiction to review only the denial of qualified immunity and only to the extent the denial turned on questions of law. This narrows our consideration to two issues: whether Nurse Kuehn was entitled to qualified immunity as a private medical contractor, and whether it was clearly established that Clark had a right to be free from deliberate indifference to his serious risk of suicide. We agree with the district court on both points, so we

affirm its denial of summary judgment for these two defendants.[1]

I.  *Factual and Procedural Background*

   A.  *Clark's History of Suicidal Behavior*

Our review on appeal from denial of summary judgment based on qualified immunity is limited to questions of law, so

---

[1] The parties and the district court addressed Clark's rights under the Eighth Amendment. While the Eighth Amendment applies to convicted prisoners, the Fourteenth Amendment applies to pretrial detainees. See *Kingsley v. Hendrickson*, 576 U.S. —, —, 135 S. Ct. 2466, 2475 (2015) ("The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically.") (quotations omitted). Courts have expressed some uncertainty regarding which amendment controls for hybrid forms of detention, such as here where Clark's extended-supervision officer placed him on short "holds" in the county jail. See, e.g., *Hoyt v. Gilden*, No. 15-cv-437-jdp, 2017 WL 90389, slip op. at *3 (W.D. Wis. Jan. 10, 2017) ("When plaintiff turned himself in after violating the terms of his extended supervised release from his prior conviction, and was thus held in jail custody, it is not clear whether the law considered him a 'prisoner' or a 'pretrial detainee.'"). We need not address this issue here, both because of the parties' apparent agreement and because summary judgment was properly denied under the Eighth Amendment standard, which is at least as difficult for a plaintiff to satisfy as the Fourteenth Amendment standard. See, e.g., *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003) ("as a pretrial detainee, [plaintiff] was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment "); see also *Jackson v. Illinois Medi–Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) ("[W]hen considering a pretrial detainee's claim of inadequate medical care, we frequently turn to the analogous standards of Eighth Amendment jurisprudence.") (citations omitted).

we recount the facts as stated by the district court in its assessment of the summary judgment record. See *Locke v. Haessig*, 788 F.3d 662, 665 (7th Cir. 2015).

Ryan Clark struggled for years with alcoholism and depression. In 2009 he was released from Wisconsin state prison after serving time for his fifth offense of operating a vehicle under the influence of alcohol. His release was subject to extended supervision. Over the next two years he was admitted to the Green Lake County Jail approximately eight times. Each time his extended-supervision officer placed him on a "hold" due to alleged violations of his supervision rules, and each time he was intoxicated.

Jail records show that Clark received regular medical treatment for depression while in custody. He was frequently given medication for depression, such as sertraline and fluoxetine, and his jail record stated that he experienced "anxiety attacks" when he did not receive his medication. The jail records also documented Clark's serious risk of suicide. This included documentation of instances of self-harm, including a suicide attempt in 2011. At times in the past, the jail had put Clark on "Special Watch Observation," where he was observed every fifteen minutes to prevent suicide.

B.  *Intake, Confinement, and Suicide*

On May 23, 2012, Clark was admitted once more to the Green Lake County Jail because he violated supervision rules by drinking alcohol. His breath test showed a blood alcohol level of 0.27, more than three times the legal limit for driving. Defendant Walker performed the intake process. Following standard practice, Walker administered the Spillman Initial

Inmate Assessment, which is a software program that includes a suicide risk assessment. The program provides questions for the intake officer to ask the inmate, and it uses the inmate's responses to estimate his suicide risk.

Based on Clark's responses, the Spillman Assessment calculated that he was at a "maximum" suicide risk. According to the jail administrator, the Spillman Assessment is not dispositive, and officers have discretion to initiate the suicide protocol based on other factors, such as when an inmate expressly says that he is contemplating suicide. Walker testified that he thought the Spillman Assessment automatically produced a maximum suicide rating for all inmates intoxicated at the time of the test. Officer testimony indicated that officers made discretionary determinations about suicide risk without psychological training on suicide prevention or an understanding of how the Spillman Assessment functioned.

After completing the suicide assessment reflecting maximum risk, Walker placed Clark in the holding cell to wait for Nurse Kuehn's routine medical intake. He left the Spillman Assessment for her review. Walker did not, however, implement the jail's suicide prevention protocol, which requires special precautions for inmates at risk of committing suicide. For instance, officers are supposed to check jail records to determine if the inmate has a prior history of suicidal behavior. Walker did not conduct this check, which would have shown a prior suicide attempt while in jail. Nor did Walker place Clark in a suicide prevention cell, initiate monitoring of Clark, or refer him to a mental health provider. The district court also found a factual dispute between Walker and Nurse Kuehn over who was responsible for initiating the suicide protocol.

Nurse Kuehn performed Clark's medical intake. Kuehn worked for Correctional Healthcare Companies, a company contracted by the jail to provide medical services. During the intake, Kuehn documented that Clark was taking antidepressant medication but could not remember the name of his medicine while he was intoxicated. She never followed up to learn Clark's medication. She placed Clark's Spillman Assessment in his medical chart, but she also did not take steps pursuant to the jail policy to mitigate Clark's risk of suicide. She did not refer Clark to a mental health counselor, which she had done for Clark in the past. Nor did she inform jail staff of Clark's suicide risk. Instead of assigning Clark to the cell designed for suicide prevention, she assigned him to a cell for alcohol detoxification. Inmates in detoxification cells are alone 24 hours a day. Kuehn later testified that she was aware that alcohol detoxification increases the risk of suicide. She also testified that she knew Clark would experience extreme isolation in the detoxification cell. Kuehn followed up with Clark several times after his initial intake.

Four nights later, Clark committed suicide, on May 28 shortly after midnight. The officers on duty at the time were unaware that Clark posed a suicide risk. He was not in the suicide prevention cell, and neither Walker nor Kuehn had notified them of any risk. The officer monitoring the security cameras did not observe Clark's suicide. The video recording shows that Clark's preparation and suicide took approximately thirty minutes. Clark fashioned a noose with pieces of fabric and tied it to his bedroll. He used his bedroll as a counterweight by placing it over a little dividing wall in his cell, and then hanged himself by letting his body sag on the other side of the wall. An officer discovered Clark's body approximately one hour later, but it was too late to revive him.

C. *Procedural History*

In November 2014 Clark's estate brought suit under 42 U.S.C. § 1983 alleging deliberate indifference to Clark's risk of suicide. The estate named as defendants Green Lake County and Officers Walker, Schoenscheck, and Pflum (the "County Defendants"). The estate also named Kuehn and Correctional Healthcare Companies, Inc. (the "Medical Defendants"). The County Defendants moved to dismiss or alternatively for summary judgment. The Medical Defendants also moved for summary judgment. The district court denied the County Defendant's motion to dismiss and then granted summary judgment on the Eighth Amendment claim for all defendants other than Walker and Kuehn.[2]

The court found that genuine issues of material fact precluded summary judgment for Walker and Kuehn. As an initial matter, Walker and Kuehn both disputed who was responsible for initiating the suicide protocol. The court also concluded that the estate offered sufficient evidence to allow a jury to find that Walker and Kuehn acted with deliberate indifference to Clark's risk. Finally, the court rejected defendants' qualified immunity arguments. After reviewing our precedent, the court held that the immunity defense should not extend to Kuehn as a private contractor. Nonetheless, the court went on to consider the merits of the qualified immun-

---

[2] Defendants also named Health Professionals Ltd. as a defendant, but that company was taken over by Correctional Healthcare Companies, and for purposes of this case it is undisputed that both organizations had common corporate ownership. In addition, the estate amended its complaint to add a *Monell* claim against Green Lake County, but that issue is not before us on appeal.

ity defense for both defendants and determined that the defense failed because it was clearly established in 2012 in the Seventh Circuit that deliberate indifference to an inmate's serious risk of suicide violates the Eighth Amendment. Walker and Kuehn then appealed the denial of summary judgment.

II.  *Analysis*

A.  *Jurisdiction over Denial of Summary Judgment*

We have limited jurisdiction over these appeals. Ordinarily, a denial of summary judgment is not appealable because it is not a final order. See 28 U.S.C. § 1291; *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). The collateral order doctrine recognizes certain exceptions, including when qualified immunity is denied for legal reasons. See *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291.").

If qualified immunity is denied at summary judgment because of a factual dispute, however, we do not have jurisdiction over that issue. *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995) ("[W]e hold that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."); see also *Locke*, 788 F.3d at 665 ("Because this is an interlocutory appeal from the district court's denial of qualified immunity, we have appellate jurisdiction over only legal questions."). As the Supreme Court explained in *Johnson*, we have appellate jurisdiction when a district court denies a pub-

lic official's qualified immunity defense and "the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." 515 U.S. at 311 (citations omitted).

Given these constraints, we cannot review all of the issues briefed by Walker and Kuehn, including whether the district court erred by denying their motions for summary judgment on the merits of the deliberate indifference claim. That ruling on the merits is not a final judgment, and it does not fall into one of the exceptions provided by the collateral order doctrine. See *Ortiz*, 562 U.S. at 188, citing *Liberty Mutual Ins. Co., v. Wetzel*, 424 U.S. 737, 744 (1976).

B.  *Denial of Qualified Immunity*

We review *de novo* a district court's denial of summary judgment based on qualified immunity. *Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012). Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When we review a defendant's motion for summary judgment based on qualified immunity, we consider "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009), citing *Pearson*, 555 U.S. at 232.

### 1. *Private Contractors*

Before addressing the two steps of qualified immunity, we must determine whether Kuehn was entitled to invoke qualified immunity as a private healthcare contractor. Kuehn's central argument is that the Supreme Court's decision in *Filarsky v. Delia*, 566 U.S. 377 (2012), requires us to extend qualified immunity to private healthcare contractors, even though our cases since *Filarsky* have held otherwise.

We have addressed this issue recently, holding that private medical personnel in prisons are not entitled to the protection of qualified immunity. See, e.g., *Petties v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016) (en banc) ("qualified immunity does not apply to private medical personnel in prisons"), citing *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 794 (7th Cir. 2014); see also *Rasho v. Elyea*, 856 F.3d 469, 479 (7th Cir. 2017) ("This Court has construed the Supreme Court's holding that employees of privately-operated prisons may not assert a qualified-immunity defense also to deny that defense to employees of private corporations that contract with the state to provide medical care for prisoners.").

In *Richardson v. McKnight*, 521 U.S. 399, 401 (1997), the Supreme Court held that privately employed prison guards cannot assert qualified immunity. More recently in *Filarsky*, the Court considered whether a private lawyer who worked part time for a municipality was eligible for qualified immunity on federal claims arising from his public service. The Court determined that the lawyer was eligible, holding that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis." *Filarsky*, 566 U.S. at 389. *Filarsky* did not overrule *Richardson*. Instead, "the *Filarsky*

Court reaffirmed the holding of *Richardson* categorically rejecting immunity for the private prison employees there." *Currie v. Chhabra*, 728 F.3d 626, 631 (7th Cir. 2013), citing *Filarsky*, 566 U.S. at 392–94.

The Court in *Filarsky* reached its conclusion on the part-time lawyer through an historical inquiry, asking whether the person asserting qualified immunity would have been immune from liability under the common law in 1871 when Congress passed the law later codified as § 1983. See *Filarsky*, 566 U.S. at 384. In a detailed opinion, the Sixth Circuit applied *Filarsky*'s historical method and held that a privately employed doctor working for a state prison could not invoke qualified immunity. *McCullum v. Tepe*, 693 F.3d 696, 697 (6th Cir. 2012). After examining numerous nineteenth-century sources, the Sixth Circuit concluded that "the absence of any indicia that a paid physician (whether remunerated from the public or private fisc) would have been immune from suit at common law, convince[s] us that there was no common-law tradition of immunity for a private doctor working for a public institution at the time that Congress passed § 1983." *Id.* at 704. We found the Sixth Circuit's reasoning persuasive in *Currie*, 728 F.3d at 632, and have held in other post-*Filarsky* cases that private medical personnel in prisons are not afforded qualified immunity. See, e.g., *Rasho*, 856 F.3d at 479; *Petties*, 836 F.3d at 734. Because Kuehn was a privately employed nurse working at the Green Lake County Jail, she is ineligible for qualified immunity.

2. *Step 1: Violation of a Constitutional Right*

Because Kuehn is ineligible for qualified immunity, we turn our focus to Walker's appeal. The first qualified immunity step raises again the issue of deliberate indifference. We

can review this question in the context of a denial of qualified immunity at summary judgment to the extent that the denial turns on a question of law. In this case, deliberate indifference requires the estate to show that Clark had a serious medical condition that posed a substantial risk and that Walker actually knew about the risk and acted or failed to act in disregard of that risk. See *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002), quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Walker admits that an elevated risk of suicide is a serious medical condition, but he disputes whether Clark's risk was sufficiently acute. He also argues that there was insufficient evidence to raise a genuine issue about whether he "actually knew" of Clark's risk and disregarded it.

Both of these disputes are factual in nature. *Johnson* holds that a defendant who is denied qualified immunity at summary judgment cannot immediately appeal "whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." 515 U.S. at 307. The district court found here that "the facts, when taken in the light most favorable to the plaintiff, establish that Walker was aware that Clark was a risk" but that he "told no one." (The court also found that the "record is replete with questions of fact that preclude summary judgment with respect to Kuehn.") Because the district court's ruling on the first qualified immunity step turns on factual questions, we do not have jurisdiction to review it.

### 3. *Step 2: Clearly Established Law*

We do have jurisdiction to review the second qualified immunity step: whether Clark's asserted rights were clearly es-

tablished at the time of his suicide. A right is clearly established when it is defined clearly enough to put officers on notice of their duties under the circumstances they confront. See *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quotation omitted). This does not require a prior case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Clark's right to be free from deliberate indifference to his risk of suicide while he was in custody was clearly established at the time of his death in 2012. See *Cavalieri*, 321 F.3d at 623 ("[T]he right Mrs. Cavalieri asserts on behalf of Steven is the right to be free from deliberate indifference to suicide. There is no doubt that this right was clearly established prior to Steven's 1998 suicide attempt."); *Hall v. Ryan*, 957 F.2d 402, 404–05 (7th Cir. 1992) ("It was clearly established in 1986 that police officers could not be deliberately indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk."); see also *id.* at 406 n.6 (collecting cases from other circuits).

Walker responds to this substantial body of case law in several ways. First, he argues that it is "doubtful" whether circuit precedent can clearly establish law for purposes of qualified immunity. He cites two Supreme Court cases, but both cases leave this question unanswered. See *Taylor v. Barkes*, 579 U.S. —, —, 135 S. Ct. 2042, 2045 (2015); *City & County of San Francisco v. Sheehan*, 575 U.S. —, —, 135 S. Ct. 1765, 1776 (2015).

Other Supreme Court cases indicate circuit precedent is adequate for these purposes. See, e.g., *Wilson v. Layne*, 526 U.S. 603, 617 (1999) ("Petitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely."). In addition, we have exercised this authority for decades, including in this specific context of prison and jail suicides. See *Hall*, 957 F.2d at 404–05; see also *Werner v. Wall*, 836 F.3d 751, 762 (7th Cir. 2016). We see no reason to depart from these precedents.

Second, Walker argues that the Supreme Court's decision in *Taylor v. Barkes* shows that Clark's rights were not clearly established. 579 U.S. —, 135 S. Ct. 2042 (2015). Barkes had committed suicide in prison, and his estate brought a § 1983 suit for deliberate indifference. The estate sued the commissioner of the Delaware Department of Correction and the warden of the prison where Barkes committed suicide. Although it was undisputed that the commissioner and the warden had never interacted with Barkes and did not know about his suicide risk, the complaint alleged that these officials violated Barkes' rights by failing to supervise and monitor the implementation of adequate suicide prevention protocols. *Id.* at 2043. The Supreme Court reversed the Third Circuit, holding that the right at issue was not clearly established at the relevant time in the precedent of the Supreme Court or the Third Circuit. *Id.* at 2045.

*Taylor* is readily distinguishable from this case. First, Clark's estate is not suing supervisory officials who did not know about Clark's risk. The estate contends that Walker and Kuehn *actually knew* Clark's risk and disregarded it. Second, in *Taylor* the Supreme Court reversed the Third Circuit in part

because the right at issue was not clearly established in the Third Circuit. Here, the right at issue has long been clearly established in this circuit, as explained above.

Finally, Walker argues that the clearly established prohibition on deliberate indifference to prisoners' and jail inmates' risk of suicide is too general to be enforceable for purposes of qualified immunity. Walker urges us to consider Clark's rights at a very high level of specificity: whether a jail inmate had a right "to be placed immediately on a special watch in a suicide cell despite no outward signs of suicidal ideation during an initial intake assessment, when the intake officer knew that trained medical personnel would conduct a follow-up assessment and ultimately determine the inmate's proper observation and housing status." This very specific right, Walker argues, "has never been clearly established by the Supreme Court."

Courts may not define clearly established law at too high a level of generality, see *Sheehan*, 575 U.S. at —, 135 S. Ct. at 1775–76, but there is no such problem here. The Supreme Court has long held that prisoners have an Eighth Amendment right to treatment for their "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury. Risk of suicide is a serious medical need, of course. See *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) ("It goes without saying that suicide is a serious harm.") (quotation omitted). Accepting the facts described by the district court, Clark's estate has offered sufficient evidence for a jury to find that Walker actually knew about Clark's serious risk of suicide.

(Recall that Clark's score on the suicide risk screening tool indicated a maximum risk of suicide.) Walker should have taken action based on this knowledge, yet he chose to do nothing. Our precedent establishes that "particular conduct" such as this violates clearly established law. See *Mullenix v. Luna*, 577 U.S. —, —, 136 S. Ct. 305, 308 (2015) (per curiam) (emphasis omitted), citing *al–Kidd*, 563 U.S. at 742. To the extent Walker argues that our prior cases are factually distinguishable from this case, our limited jurisdiction precludes considering that argument.

The district court's denial of summary judgment for defendants Kuehn and Walker on the basis of qualified immunity is

AFFIRMED.