**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 29, 2018[*]
Decided June 6, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-3071

| | |
|---|---|
| BRIAN BROADFIELD, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 16-CV-1202 |
| BRIAN MCGRATH, *et al.*, *Defendants-Appellants*. | Sue E. Myerscough, *Judge*. |

**O R D E R**

Three officials at the Livingston County Jail appeal the district court's denial of their motion for summary judgment based on a qualified-immunity defense to Brian Broadfield's claims of deliberate indifference and excessive force. Broadfield, a pretrial detainee, had sued the defendants for failing to contact a mental-health professional

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

when they responded to his manic outburst and for using excessive force when they transferred him from a restraint chair to a cell. We affirm in part, reverse in part, and remand for further proceedings.

Because our review of a denial of summary judgment based on qualified immunity is limited to questions of law, we may take—as given—the facts assumed by the district court when it denied summary judgment, or we may accept the plaintiff's version of the facts. *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007).

The incident at the heart of this appeal stems from Broadfield's reassignment to a different housing unit following an altercation with another inmate. Broadfield refused the reassignment and threatened to launch a hunger strike. Pending his reassignment, he was placed in a holding cell, whereupon he "flipped out" and began hitting himself in the face and throwing himself against the wall. From the holding cell, Broadfield told an officer that he needed to be put in a restraint chair to stop hurting himself.

Forty-five minutes later, Sergeant Jason Durham went to Broadfield's cell and asked him why he wanted to be placed in the restraint chair. Broadfield repeated that he was going to hurt himself. Durham relayed this to Assistant Superintendent Stuart Inman, who ordered that Broadfield be placed in a padded cell on suicide watch, issued a suicide-proof smock, and monitored every fifteen minutes. Broadfield, however, continued to hit himself in the face and bang his head against the doors and walls. He also kicked and broke his cell door's window.

At Inman's directive, Broadfield was moved to a restraint chair, where he remained for six and a half hours. He was monitored by a nurse every fifteen minutes. Broadfield says that he continued to try to hurt himself in the chair by pulling and twisting on the restraints.

Inman, concerned that continued placement in the chair was counterproductive and potentially harmful to Broadfield, eventually ordered that he be transferred to a cell. Multiple officers, including Durham and Brian McGrath, forcibly removed him from the chair. The defendants say that Broadfield became combative, though Broadfield contends that his resistance was triggered by the officers' use of force. Broadfield maintains that the officers put him in an elbow-lock and that McGrath twisted his wrist and arm while putting on handcuffs. The officers then "hog tied" him and carried him to his cell. The officers' violence during this episode, Broadfield says,

left his wrist "severely bruised" for days. Broadfield adds that he was suffocated when the officers shoved his throat up "against concrete."

The district court denied summary judgment for the defendants. In the court's view, a jury could find that defendants responded reasonably to Broadfield's mental-health episode, but a mental-health professional was "arguably the one with the expertise to decide how Plaintiff should be handled," and the defendants did not have that training. As for Broadfield's excessive-force claim, the court explained that video evidence did not capture all the force used by McGrath and Dunham, and a "reasonable inference" could not be ruled out that the amount of force used was excessive. The court also noted that Broadfield's level of cooperation with the officers was disputed. Finally, the court rejected defendants' qualified immunity arguments because Inman failed to obtain mental healthcare for Broadfield despite the situation "clearly requiring that expertise," and because McGrath and Durham had "no objective need" to use the level of force that Broadfield contended they used.

On appeal, the defendants argue that they are entitled to qualified immunity on both of Broadfield's claims. In determining whether qualified immunity applies, we look to (1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established. *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017). Beginning with Broadfield's deliberate-indifference claim, defendants argue that Inman could not have violated Broadfield's constitutional rights because his failure to summon a mental-health professional immediately cannot be equated with criminal recklessness or anything approaching intentional wrongdoing. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). Defendants maintain that Inman's initial response (ordering that Broadfield be placed in a padded cell in booking and that he be placed on suicide watch) reflected "due care" for his safety, and that his subsequent directives (ordering that Broadfield be placed in a restraint chair in the hopes he would calm down, and that a jail nurse check on him every fifteen minutes while in the chair) were "quintessentially reasonable."

Jurisdictional constraints prevent us from addressing whether Inman's actions amounted to deliberate indifference: Whether Inman's actions were reasonable in light of the circumstances is a factual question not suited to resolution on an interlocutory appeal. *See Paine v. Cason*, 678 F.3d 500, 504, 511 (7th Cir. 2012) (reasonableness of police officer's recommendation not to contact psychiatrist or physician to treat bipolar arrestee who was crying and chanting rap lyrics during her intake interview was fact issue that could not be decided on appeal from denial of summary judgment on civil-

rights claims). So we must accept the district court's conclusion that a reasonable jury could conclude that Inman knew of Broadfield's medical needs but did not act reasonably in response. *See id.*

We may, however, consider defendants' argument regarding the second step of the qualified immunity inquiry: that no clearly established law put Inman on notice that his actions amounted to deliberate indifference. We have found no case law that would have instructed Inman that he was required to do more than take the precautionary actions that he did. True, calling a mental-health professional may have been the preferable course of action, but whether Inman engaged in the best possible course of action (or even whether he was grossly negligent) is not the standard for deliberate indifference. *Rosario*, 670 F.3d at 821. Instead, we require "something approaching total unconcern for the prisoner's welfare in the face of serious risks." *Id.* (citation omitted); *see also Liebe v. Norton*, 157 F.3d 574, 577–78 (8th Cir. 1991) (jailer who classified detainee as suicide risk and took preventative measures such as placing him in holding cell, removing his belt, and periodically checking on him was entitled to qualified immunity on deliberate-indifference claim). The steps that Inman took to quell Broadfield's attempts at self-harm do not amount to a complete lack of concern. And also it was not clearly established that his failure to seek out mental-health treatment rose to the requisite level of criminal recklessness to establish deliberate indifference. The district court erred in denying qualified immunity to Inman.

Defendants next dispute the district court's conclusion that McGrath and Durham are not protected by qualified immunity on Broadfield's claim that they used excessive force while removing him from the restraint chair and then transferring him to another holding cell. Defendants argue that the district court erred in concluding that Broadfield's level of cooperation at this time was genuinely disputed. They contend that the officers' use of force—using wrist locks while taking Broadfield out of the restraint chair and then briefly hog-tying him while transferring him to another cell—was penologically justified to preserve order and security during circumstances in which Broadfield was disobedient, combative, and uncooperative.

But a defendant who is denied qualified immunity at summary judgment may not immediately appeal whether the evidence was sufficient to show a genuine issue of fact for trial. *See Estate of Clark*, 865 F.3d at 551 (quoting *Johnson v. Jones*, 515 U.S. 304, 307 (1995)). And accepting the defendants' argument would require disrupting the district court's conclusion that Broadfield's level of cooperation was sufficiently disputed.

Because the court's ruling on this step of the qualified immunity inquiry turns on factual questions, we lack jurisdiction to review this issue.

We do have jurisdiction to decide the second step of the qualified-immunity inquiry: whether Broadfield's right to be free from the type of excessive force described by the district court was clearly established. The Supreme Court has stressed that this right must be defined with adequate specificity. *Kisela v. Hughes*, 138 S. Ct. 1148, 1151 (2018). The question, then, is not whether the law forbids the use of excessive force, but whether the law clearly established as excessive force the pressing of a non-resisting detainee's neck against the concrete in a manner that prevented him from breathing, carrying him hog-tied to his cell, and severely twisting his wrist in the process. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). In making this determination, we do not require a case be directly on point, but existing precedent must be sufficiently analogous to place the officers on notice that their conduct was unlawful. *Kisela*, 138 S. Ct. at 1152.

The Supreme Court has held that a pretrial detainee can succeed on an excessive force claim by showing only that the force used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). And our precedent makes clear that the actions of McGrath and Durham were objectively unreasonable if Broadfield was not resisting. *See Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (denying qualified immunity to officers who slammed non-resisting detainee's head into concrete bunk and used a Taser while he was handcuffed); *see also Sallenger v. Oakes*, 473 F.3d 731, 741–42 (7th Cir. 2007) (denying qualified immunity to officers who improperly hobbled and repeatedly struck non-resisting suspect). Thus, we will not disturb the district court's denial of McGrath and Durham's qualified-immunity defense.

We AFFIRM the district court's denial of summary judgment with respect to McGrath and Durham. We REVERSE the denial of summary judgment with respect to Inman and REMAND for further proceedings.