RIPPLE, Circuit Judge, dissenting.
The majority concludes that, given the factual findings of the district court, we lack jurisdiction to consider the first prong of the qualified-immunity analysis: whether the individual officers violated Mr. Williams's constitutional rights. It concludes, however, that we have jurisdiction to consider the second prong of the qualified-immunity analysis: whether those constitutional rights were clearly established.
This approach, in my view, suffers from two infirmities. First, it fails to recognize that the district court's lack of a defendant-by-defendant analysis infected both prongs of its qualified-immunity analysis. Second, it interposes the two-pronged, substantive analysis of qualified-immunity claims into its consideration of jurisdiction.
One of the fixed stars in this area of our work is that qualified immunity "is an individual defense available to each individual defendant in his individual capacity." Bakalis v. Golembeski , 35 F.3d 318, 326-27 (7th Cir. 1994) (emphasis added). Determining whether an individual officer is entitled to qualified immunity involves a two-step analysis: 1) whether the individual officer violated Mr. Williams's constitutional rights; and 2) whether those rights, "articulated at a meaningful level of particularity," were clearly established at the time of the incident. Canen v. Chapman , 847 F.3d 407, 412 (7th Cir. 2017). As the majority notes, "[o]ur cases demonstrate a painstaking commitment to an individualized qualified immunity analysis, especially when the facts relative to the alleged constitutional violation differ from defendant to defendant." Majority Op. 651-52.
The district court failed to follow this elemental step. Although its recitation of the facts acknowledges the officers' varying encounters with Mr. Williams, its qualified-immunity analysis does not reflect an officer-by-officer approach. Instead, the *653 court reached a blanket conclusion that the officers had violated Mr. Williams's constitutional rights and that those rights, considered abstractly, were clearly established at the time that Mr. Williams was apprehended. Counsel and this court, therefore, were left with a vague, amorphous determination. As a result, there was much confusion in the briefs and at oral argument as to whether the defendants were attempting to appeal a question of law or of fact as we, in effect, struggled to do the work of the district court.
Turning to the second infirmity, I have grave reservations about our deciding the question of our own jurisdiction on the prong-by-prong basis of substantive qualified-immunity analysis. Courts do not exercise jurisdiction over "prongs" of a substantive analysis; they exercise jurisdiction over judgments or orders of courts whose actions are subject to their review. Indeed, in deciding that the denial of qualified immunity was an immediately appealable collateral order, the Court spoke in terms of the "claim of qualified immunity." Mitchell v. Forsyth , 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
Here, we either have jurisdiction over the order of the district court denying qualified immunity or we do not. In the case of an order denying qualified immunity to an individual officer, we may consider such appeals to the extent the defendant presents an abstract issue of law: whether the actions of a defendant violated the constitutional rights of the plaintiff or whether the right violated was clearly established at the time that the defendant acted. See, e.g ., Green v. Newport , 868 F.3d 629, 632 (7th Cir. 2017). Appellate review is precluded only when the district court's denial of qualified immunity is based on a factual issue that cannot be divorced from the purely legal questions related to qualified immunity. See Levan v. George , 604 F.3d 366, 369 (7th Cir. 2010) ("If the denial of qualified immunity turns on factual rather than legal questions, the denial is not properly subject to appellate jurisdiction under the collateral order doctrine because the decision is not 'final.' "). Even if key facts are disputed, however, appellate review still is possible when, for purposes of appeal, the defendant concedes that the plaintiff's version of the facts is correct or when the defendant accepts that there are factual disputes but takes each disputed fact in the light most favorable to the plaintiff. Jones v. Clark , 630 F.3d 677, 680 (7th Cir. 2011). In short, the presence of a pure question of law as to either prong of the qualified-immunity analysis provides a basis for our jurisdiction. However, our jurisdiction over the claim of qualified immunity, once jurisdiction is secure, is not so limited.
I am aware of only one published opinion from our court, Estate of Clark v. Walker , 865 F.3d 544, 551-53 (7th Cir. 2017), that explicitly employs a prong-by-prong consideration of jurisdiction. See also Broadfield v. McGrath , --- Fed.Appx. ----, ----, 2018 WL 2722504, at *3 (7th Cir. June 6, 2018) (unpublished) (relying on Estate of Clark ). However, Estate of Clark neither explains the rationale behind, nor the authority supporting, its use of jurisdictional terminology. No doubt, we and other courts have employed the term "jurisdictional" in a casual manner when discussing appellate review of qualified-immunity cases. However, in other contexts, the Supreme Court has noted that "[j]urisdiction ... is a word of many, too many, meanings," Steel Co. v. Citizens for a Better Env't , 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting United States v. Vanness , 85 F.3d 661, 663 n.2 (D.C. Cir. 1996) ), and has cautioned us against transforming procedural and prudential rules into jurisdictional mandates, see *654 Kontrick v. Ryan , 540 U.S. 443, 454, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Similarly, we should be cautious in conflating the substantive analysis of a claim of qualified immunity with the question whether we have jurisdiction to consider that claim.
As I already have noted, I agree with my colleagues that this case comes to us in an unfinished state, a condition that impeded significantly the ability of counsel to present the appeal to us and that makes careful decision-making on our part difficult. Given the state of the record, the appropriate course is to pretermit the question of appellate jurisdiction and remand the case to the district court for an individualized determination of qualified immunity for each of the defendants.[1] Once we have a more fulsome analysis, we then can consider whether we have jurisdiction as to the qualified-immunity claim of each defendant and assess seriously whether a prong-by-prong approach to jurisdiction is appropriate.

We could "undertake [the] cumbersome review of the record," Whitlock v. Brueggemann , 682 F.3d 567, 574 (7th Cir. 2012) (quoting Johnson v. Jones , 515 U.S. 304, 319, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ), here and determine whether, taking the facts in the light most favorable to Mr. Williams's estate, each individual officer violated Mr. Williams's Fourth Amendment rights and whether the contours of the Fourth Amendment right were sufficiently clear that each individual officer "would understand that what he [wa]s doing violate[d] that right." Volkman v. Ryker , 736 F.3d 1084, 1090 (7th Cir. 2013) (internal quotation marks omitted). But because the ability of counsel to brief the case in an effective manner may well have been impeded by the district court's failure, the far more prudent course is to require the district court to undertake the initial assessment. This approach is especially advisable when this process well may alter the district court's determination with respect to at least some defendants.