**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4104
_____

SHEMTOV MICHTAVI

v.

WILLIAM SCISM, FORMER WARDEN, LSCI
ALLENWOOD; J. MILLER, SUPERVISING PHYSICIAN,
LSCI ALLENWOOD;D. SPOTTS, COORDINATOR,
HEALTH SERVICES, LSCI ALLENWOOD;
UNITED STATES OF AMERICA; J.L. NORWOOD,
NORTHEAST REGIONAL DIRECTOR; HARRELL
WATTS, NATIONAL INMATE ADMINISTRATIVE
APPEALS ADMINISTRATOR;DELBERT G. SAUERS,
WARDEN LSCI ALLENWOOD;FRANK STRADA,
FORMER WARDEN, LSCI ALLENWOOD
DOES #1 TO #5

William Scism,
D. Spotts,
J. Miller,
        Appellants

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.: 1-12-cv-01196)
District Judge: Honorable John E Jones, III

Submitted under Third Circuit LAR 34.1(a)
on September 11, 2015

(Opinion filed: October 19, 2015)

Before: VANASKIE, SLOVITER, and RENDELL
Circuit Judges

Barbara L. Herwig, Esquire
United States Department of Justice
Appellate Section, Room 7263
950 Pennsylvania Avenue, N.W.
Washington, DC   20530

Lowell V. Sturgill, Jr., Esquire
United States Department of Justice
Civil Division, Room 7241
950 Pennsylvania Avenue, N.W.
Washington, DC   20530

Melissa A. Swauger, Esquire
Office of United States Attorney
228 Walnut Street
P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA   17108

Counsel for Appellants

Shemtov Michtavi
Ayalon Prison
P.O. Box 16
Ramla, 72100
Israel

Pro Se Appellee

---

O P I N I O N

---

**RENDELL,** <u>Circuit Judge</u>

Shemtov Michtavi, a pro se prisoner, brought suit against William Scism, former warden of the Federal Correctional Institution in Allenwood, D. Spotts, former Assistant Health Services Administrator and medical supervisor at Allenwood, and Dr. J. Miller, supervising physician at Allenwood ("Appellants"), for their failure to treat his retrograde ejaculation condition.  Appellants moved

for summary judgment based on qualified immunity, but the District Court denied their motion because it concluded that there was a question as to whether retrograde ejaculation is a serious medical need requiring treatment under the Eighth Amendment. Appellants appeal that order, and we conclude that they are entitled to qualified immunity because a prisoner's right to treatment of retrograde ejaculation, infertility, or erectile dysfunction is not clearly established. Accordingly, we will reverse the District Court's order and remand for the District Court to enter summary judgment in Appellants' favor.

## I.    **Background**

While he was incarcerated at Allenwood, Michtavi received an operation to treat his prostate. The Federal Bureau of Prisons ("BOP") contracted with Dr. Chopra, who was not a BOP employee, to perform the surgery. After the surgery, Michtavi noticed that the quantity of his ejaculate had reduced. He was diagnosed with retrograde ejaculation. He asked the BOP to treat this problem "because when I do finally get released from prison, I wish to have a normal sex life." (J.A. 163.) He also complained that if he was not treated, he might become impotent. The BOP responded that it does not treat impotence. On January 13, 2011, Michtavi saw Dr. Chopra, who "advised that Psuedofel would be prescribed to close the hole that was opened during the laser surgery which would thereby prevent ejaculate from leaking into the bladder." (J.A. 267.)

The BOP did not provide the medication because "[i]t is the Bureau of Prison's position that the treatment of a sexual dysfunction is not medically necessary,

4

and . . . medical providers are not to talk to inmates about ejaculation, since it is a prohibited sexual act." (J.A. 188.)[1]

Michtavi filed suit, asserting an Eighth Amendment claim for deliberate indifference to his serious medical need. Appellants filed a motion to dismiss and for summary judgment and argued that they were entitled to qualified immunity. The Magistrate Judge issued a Report and Recommendation, recommending that their motion be denied because "the right to procreation is a fundamental right and the Supreme Court has recognized that a prisoner has a fundamental right to post-incarceration procreation." (J.A. 93.) The Magistrate Judge cited *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942), in which the Supreme Court struck down a law mandating sterilization for habitual criminals. The Magistrate Judge then concluded that "prisoners retain a fundamental right to preserve their procreative abilities for use following release from custody." (J.A. 93.) She recommended that, because Michtavi had alleged that retrograde ejaculation could make him sterile, his Eighth Amendment claims should survive summary judgment. She also concluded that the Defendants were not entitled to qualified immunity because Eighth Amendment jurisprudence clearly establishes that prison officials may not be indifferent to a serious medical need. The District Court adopted the Magistrate Judge's Report and Recommendation. Appellants then filed this interlocutory appeal challenging the District Court's denial of qualified immunity.

---

[1] BOP regulations prohibit "[e]ngaging in sexual acts." 28 C.F.R. § 541.3, tbl.1 no. 205.

## II.    **Analysis**[2]

Appellants are entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

### A. Defining the Right at Issue

The District Court defined the right at issue as either the Eighth Amendment right to treatment of serious medical needs or the fundamental right to procreate, but both of those definitions are too broad.

"In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see also al-Kidd*, 131 S. Ct. at 2084 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search

---

[2] We have jurisdiction over this interlocutory appeal because "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (emphasis original to *Mullenix*) (quoting *al-Kidd*, 131 S. Ct. at 2084). In *Mullenix*, the Supreme Court reiterated that courts are to look to the specific conduct at issue to determine whether such conduct is clearly established as violative of a plaintiff's constitutional or statutory rights. *Mullenix* concerned the qualified immunity defense of a police officer who had shot and killed a suspect in a high-speed chase after that suspect had threatened to shoot the police officers pursuing him. *See id.* at 306-07. The Fifth Circuit had defined the conduct at issue as the legality of "us[ing] deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Id.* at 308-09 (quoting *Luna v. Mullenix*, 773 F.3d 712, 725 (5th Cir. 2014)). The Supreme Court rejected this definition, noting that the particular circumstances of the case warranted a more specific definition of the right at issue. *See id.* at 309 ("The general principle that deadly force requires a sufficient threat hardly settles this matter.").

Here, the District Court defined the right at issue as either the Eighth Amendment right to treatment of serious medical needs or the fundamental right to procreate. We find both of these definitions of the right to be too broad, as neither focuses on the conduct at issue. That is, neither definition allowed the District Court to examine whether the "violative nature of [the] *particular* conduct" at issue in this case was clearly established. *Cf. id.* at 308 (emphasis in original). The particular conduct at issue in this case is the

7

failure to treat retrograde ejaculation which could lead to impotence and infertility. A properly tailored definition of the right at issue here, thus, is whether the BOP is obligated to treat conditions resulting in impotence and/or infertility, such as retrograde ejaculation and erectile dysfunction.

B. <u>Determining Whether the Right at Issue is Clearly Established</u>

In determining whether a properly tailored definition of the right at issue is clearly established, the Court must consider whether "existing precedent [has] placed the statutory or constitutional question beyond debate." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2084). In *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam), the Supreme Court held that there was no clearly established right to suicide prevention measures in prisons and emphasized the importance of the "clearly established" prong of qualified immunity. The Supreme Court explained that, "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols." *Id.* at 2044. It also noted that, "'to the extent that a robust consensus of cases of persuasive authority' in the Courts of Appeals 'could itself clearly establish the federal right respondent alleges,' the weight of that authority at the time of Barkes's death suggested that such a right did *not* exist." *Id.* at 2044 (quoting *City & Cnty. of S.F., Cal. v. Sheehan*, 135 S. Ct. 1765, 1778 (2015)). Thus, *Barkes* makes clear that there must be precedent indicating that the specific right at issue is clearly established.

8

There is no Supreme Court or appellate precedent holding that prison officials must treat retrograde ejaculation, infertility, or erectile dysfunction; in fact, the weight of authority is to the contrary. The Magistrate Judge relied on *Skinner*, but *Skinner* establishes only that states may not sterilize prisoners; it does not hold that prisoners are entitled to treatment for infertility or sexual problems. The Court of Appeals for the Sixth Circuit has held that a prisoner is not entitled to treatment for erectile dysfunction. It upheld a district court's grant of summary judgment to prison officials who failed to treat an inmate's erectile dysfunction because "erectile dysfunction cannot be said to be a serious medical condition, given that no physician indicated its treatment was mandatory, it was not causing . . . pain, and it was not life-threatening." *Lyons v. Brandly*, 430 F. App'x 377, 381 (6th Cir. 2011). And, in *Goodwin v. Turner*, 908 F.2d 1395 (8th Cir. 1990), the Court of Appeals for the Eighth Circuit upheld the BOP's policy against permitting prisoners to procreate. The BOP had denied a prisoner's request for "a clean container in which to deposit his ejaculate, and a means of swiftly transporting the ejaculate outside the prison" to his wife, who could inject herself with a syringe. *Id.* at 1398. The *Goodwin* court held that, even though procreation is a fundamental right, "the restriction imposed by the Bureau is reasonably related to achieving its legitimate penological interest." *Id.* While *Goodwin* did not involve a medical condition, it did hold that the BOP is not required to help a prisoner procreate. Because there is no authority establishing—let alone "clearly" establishing—a right for prisoners to receive treatment for conditions resulting in impotence and/or infertility, such as retrograde ejaculation or erectile dysfunction, Appellants are entitled to qualified immunity.

9

## III.    <u>**Conclusion**</u>

Accordingly, we will reverse and remand to the District Court with instructions to enter summary judgment for Appellants.