In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3028

RICARDO GLOVER,

*Plaintiff-Appellant,*

*v.*

KEVIN CARR, Secretary of the
Wisconsin Department of Corrections,
in his official capacity, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-01048-LA — **Lynn Adelman**, *Judge.*

ARGUED NOVEMBER 5, 2019 — DECIDED FEBRUARY 6, 2020

Before FLAUM, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* Ricardo Glover, a Wisconsin inmate, sued prison medical staff and Wisconsin Department of Corrections officials for deliberate indifference and for violating his right to equal protection after they denied him medicine

prescribed for post-surgical erectile dysfunction. *See* 42 U.S.C. § 1983; *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976) (deliberate indifference to a prisoner's serious medical needs constitutes unnecessary and wanton infliction of pain proscribed by Eighth Amendment). Glover alleges that treatment of his erectile dysfunction was both necessary for penile rehabilitation and time sensitive in the sense that he was at risk of suffering permanent loss of erectile function if his condition was left untreated for too long following surgery. The defendants argued at summary judgment that the Department's then-current medical director was wholly responsible for the challenged decision, but Glover had sued only the former director and other uninvolved parties. Glover moved to substitute the new director as a defendant, but the court (twice) denied the motion. It entered summary judgment for the defendants on Glover's claim for damages and then deemed his claim for injunctive relief voluntarily withdrawn, in order to finalize the decision for appeal.

Glover appealed the judgment pro se. Following our review of the initial briefing, we appointed counsel to represent Glover, ordered re-briefing, and set the case for argument. We now conclude that the district court abused its discretion by not allowing Glover to amend his complaint. We vacate the judgment and remand the case in order to allow Glover to proceed against the appropriate medical director in his individual capacity. We affirm the remainder of the judgment.

## I.

In December 2015, while he was incarcerated with the Wisconsin Department of Corrections ("WDOC"), Glover was

diagnosed with an aggressive form of prostate cancer, and he elected to have surgery to remove his prostate the following month; since that time he has suffered from erectile dysfunction. After the surgery, Glover's off-site urologist recommended that Glover medically rehabilitate his penile function by taking Cialis (tadalafil). To be clear, the purpose of this recommendation was to preserve Glover's long-term erectile function, as opposed to facilitating any sexual activity while Glover remained incarcerated.[1] As noted, Glover alleges that he was at risk of losing his erectile function permanently if he did not receive timely treatment.

Because Cialis was not on the WDOC's formulary of approved medications, Glover's prison physician instead prescribed Tolterodine, which addresses not erectile dysfunc-

---

[1] By way of background, we note that tadalafil is one of several phosphodiesterase type 5 (or PDE5) inhibitors which promote and prolong erections by increasing the flow of blood to the penis upon sexual stimulation. "PDE5 inhibitors are considered by most investigators and clinicians as the first-line treatment for [erectile dysfunction] after [radical prostatectomy], and remain the common element in most rehabilitation programs." Ateş Kadioğlu, *et al.*, *Tadalafil therapy for erectile dysfunction following prostatectomy*, 7(3) THERAPEUTIC ADVANCES IN UROLOGY 146, 150 (June 2015). PDE5 inhibitors like tadalafil are thought, but not known, to aid in penile rehabilitation by facilitating the delivery of oxygenated blood to the penile tissues, which in turn may help to preserve penile structures, length, and smooth muscle. *Id.* at 147–49. "There is little consensus on the optimal management [of post-surgical erectile dysfunction]; however, it is agreed that treatment must be prompt to prevent fibrosis and increase oxygenation of penile tissue." Alan Saleh, *et al.*, *Management of erectile dysfunction post-radical prostatectomy*, 7 RESEARCH AND REPORTS IN UROLOGY 19, 19 (Feb. 2015); *see also id.* at 20.

tion but urinary incontinence, another common side effect of prostate removal—and one which Glover initially experienced. But after Glover suffered from back pain while taking Tolterodine, his prison physician wrote him a prescription for Cialis and completed a form requesting approval for the prescription notwithstanding its absence from the WDOC formulary.[2] Dr. Ryan Holzmacher, the medical director of the WDOC's Bureau of Health Services at all relevant times, co-chaired the committee that decides which medications to list on the formulary, and he was responsible for reviewing requests for non-formulary medication on a case-by-case basis. Glover's request for Cialis was passed on to Dr. Holzmacher, who denied it. After a follow-up examination, Glover's urologist again recommended that Glover be prescribed Cialis for rehabilitation and preservation of his erectile function,[3] and the prison physician followed suit. But Glover was never given the prescribed medication.

After exhausting his administrative remedies, Glover sued prison medical staff and WDOC officials in their personal and official capacities, including Dr. Holzmacher's predecessor, who personally played no role in these events. Glover alleged that they were deliberately indifferent to his erectile dysfunction in violation of the Eighth Amendment. He also alleged that they violated his right to equal protection by treating him

---

[2]   Although the district court assumed that Cialis would be prescribed solely for erectile dysfunction, R.120 at 2 n. 1, there is nothing in the record indicating that Cialis was not part of a plan to treat all of Glover's symptoms, including urinary incontinence and erectile dysfunction.

[3]   By this time, Glover's urinary continence had substantially improved.

worse than transgender inmates who received transition-related hormonal treatment. Glover sought damages and a preliminary and permanent injunction requiring the Department to provide him Cialis. The district court denied Glover's motion for an emergency preliminary injunction without a hearing because, it determined, Glover was unlikely to establish that erectile dysfunction was a serious medical condition, as required to succeed on his deliberate indifference claim. R. 106 at 3.

During discovery, Glover authorized the defendants to access his medical records. He later revoked that authorization, however, because he was convinced that they submitted to the court inauthentic, incomplete, and improperly redacted versions.

The defendants moved for summary judgment. Regarding Glover's deliberate indifference claim, they argued that Dr. Holzmacher, whom Glover did not sue, was responsible for denying the Cialis. They also asserted that erectile dysfunction is not a serious medical need. Glover's equal protection claim, they continued, failed because inmates with erectile dysfunction are not comparable to transgender inmates, so he had not shown that he was treated differently from similarly situated inmates.

Glover then moved the district court to substitute Dr. Holzmacher for the former medical director as a defendant. Glover explained that the defendants had not informed him until summary judgment that Dr. Holzmacher was the medical director who denied his request. The district court denied his motion, explaining that "defendants have a right to defend

themselves," and "[Dr.] Holzmacher will be unable to defend himself" because Glover had revoked access to his records. R. 106 at 5.

The court then entered partial summary judgment for the defendants. It agreed with the defendants that Glover had not shown that any of them was personally involved in depriving him of Cialis. R. 120 at 3. It also agreed with their argument that erectile dysfunction treatment was not comparable to hormone therapy, so Glover had not shown a violation of equal protection. R. 120 at 8–9. The court, however, concluded that there was a material factual dispute about whether Glover's erectile dysfunction presented a serious medical need, R. 120 at 5–6, and it allowed Glover to continue pursuing injunctive relief from two defendants in their official capacities, R. 120 at 3–4, 7–8. It recruited counsel to help Glover prepare for trial, but counsel soon moved to withdraw.

The district court held a status hearing during which it made two pertinent rulings. (The telephonic hearing was neither recorded nor transcribed, so we recite the events as the district court described them in an order.) First, the court denied Glover's renewed request to seek damages from Dr. Holzmacher, instead of the former director, in his personal capacity. This time, it reasoned that substitution would be futile because Dr. Holzmacher merely enforced the Department's policy against providing erectile dysfunction medication to inmates, and thus Glover could not recover damages. R. 129 at 3.

Second, because Glover wanted to appeal the decision on his claim for damages, the court allowed Glover to voluntarily

dismiss the pending official-capacity claim for injunctive relief. R. 129 at 3–4. The court inferred that Glover was willing to forgo permanent injunctive relief because he said that he was "mostly healed now." R. 129 at 3. (According to Glover, he expressed that he already had healed "incorrectly," such that "it may be impossible for him to achieve an erection" and injunctive relief "could not help him now." R. 131-1 at 16.) The district court then finalized its summary judgment decision and dismissed the case with prejudice. R. 129 at 4; R. 130.

## II.

The issues posed in this appeal are narrow. We are informed that Glover is no longer in custody, and consequently he has no basis on which to seek injunctive relief against any of the defendants. His sole interest is in bringing Dr. Holzmacher into the case in his individual capacity so that he may sue the doctor for damages for denying his request for a non-formulary drug. His appeal is therefore limited to the contention that the district court erroneously denied him leave to amend his complaint to name Dr. Holzmacher. The district court should freely give leave to amend a complaint "when justice so requires," FED. R. CIV. P. 15(a)(2), but it may deny leave to amend a complaint if the amendment would be futile, *see Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). We review a district court's decision to deny a motion to amend the complaint for an abuse of discretion. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

Before we turn to the district court's rationale for denying Glover's requests to amend his complaint, we must address the defendants' threshold argument that any such amendment

would be pointless, as Dr. Holzmacher would surely be entitled to qualified immunity. In order for Dr. Holzmacher to be held personally liable, existing precedent must have made it clear to a reasonable level of specificity that Glover's condition amounted to a serious medical need requiring treatment. *See Campbell v. Kallas*, 936 F.3d 536, 545–47 (7th Cir. 2019); *Estate of Clark v. Walker*, 865 F.3d 544, 552–53 (7th Cir. 2017). The defendants reason that in the absence of precedent specifically recognizing that erectile dysfunction amounts to a serious medical need, it would not have been clear to Dr. Holzmacher that the prison was obligated to heed the advice of Glover's off-site urologist and prison physician and approve the prescription for Cialis. *Cf. Michtavi v. Scism*, 808 F.3d 203, 206–07 (3d Cir. 2015) (prison officials entitled to qualified immunity for failure to treat condition which might lead to impotence and infertility).

As Dr. Holzmacher is not presently a party to the litigation, we decline to resolve the matter of qualified immunity. Qualified immunity is a personal defense, *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *overruled on other grounds by Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 n.9, 121 S. Ct. 955, 968 n.9 (2001), and because it is Dr. Holzmacher who potentially faces individual liability on Glover's claim, the defense is one for him to assert. As defense counsel conceded at oral argument, the defendants—and, presumably, Dr. Holzmacher himself—certainly would not want us to resolve the immunity question *adversely* to Dr. Holzmacher in his absence. For its part, the district court did not rely on qualified immunity as a reason not to allow Glover to bring Dr. Holzmacher into the case.

At this juncture, it is enough for us to say that the answer to the question is not so obvious that permitting Glover to hale Dr. Holzmacher into the case would necessarily constitute a futile act. Two different physicians, one of them a specialist and one the WDOC's own in-house physician, deemed a Cialis prescription necessary to address a known side effect of a radical prostatectomy. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (serious medical need is, inter alia, one that has been diagnosed by a physician as requiring treatment or one which could result in further significant injury if left untreated); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (refusing to provide prescribed medication or heed specialist's advice can violate Eighth Amendment); *Estate of Clark*, 865 F.3d at 553 (for qualified immunity purposes, duty to treat prisoners' serious medical needs "need not be litigated and then established disease by disease or injury by injury").[4] Moreover, as Judge Adelman pointed out, a factfinder could infer from the present record that Dr. Holzmacher's refusal to approve the prescription was based not on the exercise of individualized medical judgment but rather rote enforcement of a WDOC policy that "categorically precludes treatment for [erectile dysfunction]," on the premise that prisoners have no right to engage in sexual activity so long as they remain incarcerated.

---

[4]  *Cf. Lyons v. Brandly*, 430 F. App'x 377, 381 (6th Cir. 2011) (non-precedential decision) (prisoner's erectile dysfunction could not be said to be serious medical condition where, inter alia, no physician indicated that its treatment was required); *Neal v. Suliene*, 2008 WL 4167930, at *3 (W.D. Wis. April 22, 2008) (prisoner's erectile dysfunction could not be considered to be serious medical condition where there was nothing to suggest, inter alia, that if diagnosed by physician it would mandate treatment).

R. 120 at 7 (citing Holzmacher Affidavit, R. 86 ¶ 8); *compare Campbell*, 936 F.3d at 545–49 (granting qualified immunity to prison officials who recognized prisoner's need for treatment but opted for one form of treatment over another), *with Roe v. Elyea*, 631 F.3d 843, 859–60, 863 (7th Cir. 2011) (sustaining district court's denial of qualified immunity to prison physician who denied treatment altogether based on prison medical protocol categorically foreclosing antiviral treatment for prisoners with fewer than 18 months remaining on their prison terms). We hasten to add that nothing we have just said in that regard should be read as pre-judging the merits of any invocation of qualified immunity. Our analysis, as we have indicated, goes no farther than to conclude the answer to whether Dr. Holzmacher would be entitled to qualified immunity is not so obvious as to render the proposed amendment of Glover's complaint futile. We otherwise leave the matter of qualified immunity to the district court in the first instance, without prejudice to any argument that Dr. Holzmacher may wish to make in that regard, and we proceed to consider whether the reasons the district court articulated for rejecting Glover's requests to bring Dr. Holzmacher into the case in his personal capacity constitute an appropriate exercise of the court's discretion.

We agree with Glover that the court abused its discretion in barring his efforts to name Dr. Holzmacher as an additional defendant.[5] The district court gave two reasons why the

---

[5]  Glover's motion was styled not as a Rule 15 motion to amend but rather as one to substitute parties pursuant to Federal Rule of Civil

(continued...)

proposed amendment of the complaint was futile, but both rely on faulty assumptions. It first determined that Dr. Holzmacher would not be able to defend himself because Glover would not let the other defendants access his medical records. The court certainly had reason to be concerned on this point. But Glover disallowed the *other* defendants, not Dr. Holzmacher, from viewing his records after he suspected them of misusing the documents. Indeed, the court never instructed Glover that he would need to authorize Dr. Holzmacher to access the records in order to sue him, and rather than giving Glover the opportunity to do so, the court assumed that he would refuse. The parties agree that under 45 C.F.R. § 164.512(e), the court has the authority to order the production of Glover's medical records to Dr. Holzmacher. Of course, if Glover withholds or interferes with the production of any relevant records, the court has the authority to present him with a choice: cooperate in the production of his records or suffer an appropriate sanction, up to and including the dismissal of his complaint. *See Fed*. R. Civ. P. 37(b)(2)(A)(v); *Collins v. Illinois*, 554 F.3d 693, 696–97 (7th Cir. 2009) (per curiam).

---

(...continued)

Procedure 25(d). The latter rule was inapplicable here, as Glover was not seeking to replace a public officer named in his official capacity who ceased to hold office while the case was pending. Rule 25(d); *see Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991). But a pro se litigant's mistaken choice of rule should not be deemed fatal when the aim of his request was clear. *See Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). The defendants concede (Appellee's Br. 15 n.3) that Glover's request was properly construed as one to amend the complaint pursuant to Rule 15(a)(2), and indeed, it appears that the district court understood it as such.

Second, the district court concluded that Glover could not win damages because Dr. Holzmacher was merely enforcing a policy against providing erectile dysfunction medications. The record shows, however, that Dr. Holzmacher co-chaired the committee that creates the formulary and that he had the authority to approve off-formulary medicine. Indeed, the defendants argued at summary judgment that *only* Dr. Holzmacher was personally responsible for denying Glover's request for Cialis.

The defendants respond that Glover's request to amend his complaint was untimely, but the district court did not "base[] its decision" on the motion's timeliness, *Watkins v. Trans Union, LLC*, 869 F.3d 514, 518 (7th Cir. 2017), so that point is irrelevant to whether the court abused its discretion. In any case, the argument is weak. Although Dr. Holzmacher's name had surfaced in discovery, it was not clear to Glover until summary judgment that it was Dr. Holzmacher who was responsible for denying him Cialis. Moreover, the existing defendants in their individual capacities have no interest in any suit that Glover may bring against Dr. Holzmacher. They can suffer no possible prejudice from the amendment. And neither they nor the district court offered any reason to believe that Glover was dilatory or strategic in leaving Dr. Holzmacher out of the lawsuit, rather than simply ignorant of his role. *See Bausch*, 630 F.3d at 562. Leave to amend a complaint should be granted liberally. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). It is difficult to see why, under these circumstances, it would not be in the interest of justice for Glover to be able to sue the person that all agree is responsible for denying him

access to Cialis. The court should have granted him leave to amend his complaint.

With that point resolved, we need proceed no further. Glover does not contest the district court's decision to enter summary judgment in favor of the originally-named defendants for want of evidence that any of them were responsible for denying him Cialis. Nor, at this point, does he challenge the district court's decisions to deny him a preliminary injunction or to enter summary judgment in favor of the defendants on his class-of-one equal protection claim.

Glover's briefs do make the case that he has a valid Eighth Amendment claim based on the prison's refusal to fill his prescription for Cialis in order to preserve his long-term sexual function. But we agree with the defendants that because it was Dr. Holzmacher, rather than any defendant presently before this court, who was responsible for the decision not to fill that prescription, and because we have concluded Glover should be permitted to amend his complaint in order to name Dr. Holzmacher, the merits of Glover's Eighth Amendment claim should await the initiation of proceedings against Dr. Holzmacher.

## III.

We REVERSE the denial of leave to amend the complaint and REMAND the case with instructions to allow Glover to add Dr. Holzmacher as a defendant in his individual capacity. The judgment is otherwise AFFIRMED. We thank Glover's appointed counsel for his vigorous advocacy on Glover's behalf.