NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 18, 2022[*]
Decided March 23, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 21-2236

| | |
|---|---|
| VICTOR ROBINSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 20-cv-28-bbc |
| RANDALL EDWARDS, et al., *Defendants-Appellees*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Victor Robinson, a Wisconsin inmate, appeals the entry of summary judgment on two sets of claims: an Eighth Amendment claim that prison officials failed to protect him from another inmate's attack and a First Amendment claim that officials denied him access to the courts. He also challenges the denial of his motion to amend his

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

complaint and obtain additional discovery. But Robinson has not adduced sufficient evidence suggesting that any defendant recklessly disregarded a substantial risk to his safety or prevented him from filing a potentially meritorious suit. Moreover, the district court reasonably denied Robinson's motion to amend and his discovery request. Therefore, we affirm.

Because we are reviewing the entry of summary judgment, we view the facts in the light that favors Robinson. *Henry v. Hulett*, 969 F.3d 769, 774 (7th Cir 2020) (en banc). Robinson was housed at the Wisconsin Secure Program Facility when he renounced his membership to the Vice Lords gang in 2014. A unit supervisor met with Robinson to discuss the matter, and Robinson warned him that other gang members might attempt to harm him for renouncing his affiliation. Three years later, Robinson was transferred to a unit with an inmate who was a current member of the Vice Lords gang. According to Robinson, that inmate had threatened to "take up the hit" that the gang put on Robinson for renouncing his membership. Robinson did not report this threat.

Three months after his transfer, the inmate affiliated with the Vice Lords gang attacked Robinson on January 2, 2018. A correctional officer conducting security rounds found the gang-affiliated inmate in bloody clothing, and he alerted the unit's sergeant, Cody Saylor. One of Saylor's jobs is to watch the unit's surveillance monitor at times during his shift. Saylor toggled through the different camera angles to see what had happened. He discovered, as he later wrote in an incident report, that "I did not have a … camera on my monitor" for the "Range 2" vestibule. "The unit," he learned, "hasn't ever" had a working camera there "since maintenance had installed new monitors," but he "did not realize that until that time." The officer conducting the security rounds locked the attacker in his cell and followed the blood trail. He found Robinson in the Range 2 vestibule, sitting in a chair and bleeding. Robinson told the officer that the other inmate had approached him about gang business and stabbed him several times.

Robinson was transferred to the Waupun Correctional Institution. There, he sought to file negligence claims under Wisconsin law against the officials at the first prison for failing to protect him from the attack. Wisconsin law bars negligence claims against state officials unless the plaintiff has served a signed and sworn "notice of claim" on Wisconsin's Attorney General within 120 days of the relevant event. Wis. Stat. § 832.82(3). Robinson asserts that Waupun's records officers refused to notarize his claim. About 113 days after the incident, Robinson mailed an unsigned letter to the Wisconsin Attorney General reporting the inmate's attack at his prior prison, and about a month later, he sent an unsworn notice of claim to the same address.

This suit came next. Robinson alleged that officials at his first prison violated the Eighth Amendment and state negligence law by failing to protect him. He also alleged that officials at his new prison violated the First Amendment by refusing to notarize his notice of claim and thereby denying him access to the courts. After discovery, Robinson moved to amend his complaint by adding new defendants (camera technicians and another officer), but the district court denied the motion as untimely and for failure to state a claim. Robinson also moved to compel the production of the full video recording of his discussion in 2014 with the unit supervisor about his gang disaffiliation. The district court granted the defendants' motion for summary judgment and denied the request for that recording as moot. It ruled that no official had violated Robinson's rights because they were unaware of the defect in the monitor before the assault, and it was not their job to assess the monitor. The court also rejected Robinson's access-to-courts claims because he had not shown prejudice from the lack of notarization.

On appeal, Robinson first argues that the district court erred by granting summary judgment to the prison officials on his deliberate-indifference claims. He contends that the court erroneously relied on Saylor's testimony, which Robinson does not believe, that Saylor was not involved in Robinson's transfer to his unit and that Saylor was unaware that the Range 2 security camera was down.

The district court correctly granted summary judgment to Saylor and the other prison officials on Robinson's Eighth Amendment claims. As for Saylor, Robinson has furnished no evidence that at the time of the attack in Range 2, Saylor knew of and recklessly disregarded a substantial risk of serious harm to his safety. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). It is undisputed that Saylor did not know about Robinson's prior gang affiliation, his renouncement of it, or the "hit" on him. Further, Robinson submitted no evidence to contradict Saylor's testimony that he was unaware of the defect in the camera's feed for Range 2 until, after the attack, the correctional officer conducting security rounds alerted him to the attacker's bloody clothing. And no evidence suggests that it was part of Saylor's job duties to watch the camera feeds constantly during his shift and determine that they were working properly. Thus, Saylor has not created a triable claim that Saylor was deliberately indifferent to Robinson's safety. *See id.* Finally, Robinson does not develop on appeal an argument to justify disturbing the entry of summary judgment for the other prison officials.

Robinson next contends that the district court should not have entered summary judgment in favor of the records staff at Waupun on his First Amendment claim that they denied him access to courts. To get past summary judgment, Robinson needed to furnish evidence that, by not notarizing his notice-of-claim forms, these officials prejudiced his negligence claims. *See Johnson v. Barczak*, 338 F.3d 771, 772 (7th Cir. 2003). But regardless of notarization, Robinson's claims were bound to fail because he did not otherwise comply with Wisconsin's notice-of-claim statute: among other problems, he did not swear to his statement in either his April 2018 letter or his May 2018 notice of claim. *See* Wis. Stat. § 893.82(3), (5). Wisconsin requires strict compliance with the statute, even if the lack of a sworn statement yields "harsh consequences." *See Kellner v. Christian*, 525 N.W.2d 286, 290 (Wis. Ct. App. 1994) (internal citations omitted).

Next, Robinson contests in his reply brief the denial of his motion to amend his complaint to add as defendants camera technicians and another corrections officer. Raising an issue in his reply is too late. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005). But in any case, the district court appropriately exercised its discretion by denying Robinson's motion because the amendment was futile. *See Glover v. Carr*, 949 F.3d 364, 367–68 (7th Cir. 2020). Specifically, he did not allege that these potential defendants had reason to know that the camera feed for Range 2 was inactive and imperiled Robinson and other inmates with possible harm.

Finally, Robinson argues that the district court erred by denying as moot his discovery request regarding the video recording of his conversation in 2014 with the unit supervisor about his renunciation of the Vice Lords. The recording, he contends, highlighted this supervisor's knowledge of the danger that Robinson warned about after he renounced his gang membership. But the district court had broad discretion in ruling on this request. *See Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008). And it did not abuse that discretion. The conversation occurred four years before the attack. The lack of temporal proximity between the warning he reported in 2014 and the attack in 2018 defeats the claim against the unit supervisor. *See Gevas*, 798 F.3d at 480–81 ("Complaints that convey only a … stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger."). True, Robinson received a new "hit" threat after he transferred units three years later, but he did not alert anyone about it.

We have considered Robinson's remaining arguments, and none has merit.

AFFIRMED